MARGARET E. JEWELL, Respondent, v. EXCELSIOR POWDER MANUFACTURING COMPANY, Appellant.

Kansas City Court of Appeals, June 17, 1912.

1. NEGLIGENCE: Master and Servant. Plaintiff sued for damages for the death of her husband, who was an employee of defendant at its powder plant. It was *held*, that the evidence presents the issue of defendant's negligence as one of fact for the jury to determine.

2. ———: Evidence: Expert Witness. An expert is one who is skilled in any particular act, trade or profession, being possessed of peculiar knowledge concerning the same, and where one qualifies as an expert the weight to be given his opinion is an issue for the jury to determine.

3. ———: Safe Appliances: Purchased from Standard Maker. Where an appliance furnished by the master is not complicated

or dangerous and is purchased from a reputable and standard maker, minute inspection is not required of the master, but if the appliance is put to a hazardous use, the master must exercise reasonable care to ascertain if it is in a reasonably safe condition for the purpose of its intended use.

Appeal from Jackson Circuit Court.—*Hon. Herman Brumback*, Judge.

AFFIRMED.

*Kinealy & Kinealy* and *E. W. Taylor* for appellant.

(1) The court erred in admitting Mr. Lemley's conversation with the deceased after the explosion. Redman v. Railroad 185 Mo. 11; Leahy v. Railroad, 97 Mo. 165; Dunlap v. Railroad, 145 Mo. App. 215; Lee v. Railroad, 112 Mo. App. 372. (2) The court erred in admitting the testimony of witness, Freeman Bailey, as to the switch and as to the contrivances mentioned in the specifications of negligence set out in the petition. Turner v. Haar, 114 Mo. 335; Graney v. Railroad, 157 Mo. 666; Steinhauser v. Sprawl, 127 Mo. 541; Berning v. Medart, 56 Mo. App. 443; Wilkinson v. Bottling Co., 154 Mo. App. 563. (3) The court erred in refusing to instruct the jury to find for the defendant. There was no evidence tending to establish the charges of negligence in the petition and it appeared that Jewell's negligence was certainly a contributory, if not the sole immediate, cause of his death.

*Botsford, Deatherage & Creason* for respondent.

(1) The court did not err in refusing defendant's demurrer at the close of plaintiff case. Buesching v. Light Co., 73 Mo. 231; Toohey v. Frivin, 96 Mo. 109; Soelder v. Railroad, 100 Mo. 681; Connoly v. Press Co., 166 Mo. 463; Jewell v. Powder Co., 143 Mo. App. 200. (2) In the absence of evidence to the contrary,

the injured party is presumed to have been in the exercise of ordinary care at the time he received his mortal injuries. Smily v. Ribo, 160 Mo. 635; Miller v. Rybo, 164 Mo. 198; 16 Cyc. 1057. (3) The court did not err in the admission of the statement of witness Lemley as to what Mr. Jewell said to him (Lemley) as to how the accident occurred, immediately after the explosion and while Mr. Jewell was still burning and on the ground. The statement of Mr. Jewell to Mr. Lemley was clearly a part of the *res gestae*. Brownell v. Railroad, 47 Mo. 344; Harrison v. Stowe, 57 Mo. 95; Leahy v. Railroad, 97 Mo. 168; Entwhistle v. Feighner, 60 Mo. 215; State v. Martin, 124 Mo. 524; State v. Lockett, 168 Mo. 485. (4) The court did not err in admitting the testimony of Freeman Bailey as to the switch and as to the contrivance mentioned in the specifications of negligence set out in the petition. He was highly qualified to testify as an expert. (5) There was abundant evidence to warrant the submission of the question to the jury as to whether or not Leonard Jewell came to his death from burns caused by a spark from the electric switch in the motor house. Jewell v. Powder Co., 143 Mo. App. 200; Dumphy v. Stock Yards Co., 118 Mo. App. 512; Ray v. Poplar Bluff, 70 Mo. App. 252; Trigg v. Lumber Co., 187 Mo. 234.

JOHNSON, J.—This is a suit by the widow of Lindsay Jewell to recover damages for the death of her husband which she alleges was caused by negligence of defendant, his employer. At the first trial the jury in obedience to a peremptory instruction returned a verdict for defendant. Subsequently the court sustained a motion for a new trial on the ground that the evidence aided by admissions in the answer of defendant made a case to go to the jury. Defendant appealed but we affirmed the judgment granting a new trial. [143 Mo. App. 200.]

After our mandate was issued defendant filed an amended answer in the circuit court which, in addition to a general denial, interposed pleas of contributory negligence and assumed risk but omitted the admissions we held aided plaintiff on the issue of the proximate cause of the injury. A second trial of the case resulted in a verdict and judgment for plaintiff in the sum of thirty-five hundred dollars and after unsuccessfully moving for a new trial and in arrest of judgment defendant again appealed. A statement of the facts considered on the former appeal appears in the official report of the case and we will not repeat those facts but will content ourselves with stating the additional facts we find are material to an understanding of the questions of law now before us for determination.

There are six specifications of negligence in the petition, but two of them were withdrawn from the jury and may be dismissed from our consideration. The remaining four relate to the maintenance by defendant of an open knife-blade switch in the motor house adjacent to the corning mill. Plaintiff charges that defendant was negligent; first, in not having an oil switch instead of a knife-blade switch; second, in not providing an automatic current breaker operated by a push button at a safe distance from the switch; third, in not having a long-handled instead of a short-handled switch, and, fourth, in not having the switch enclosed in a dust proof cabinet. It is the contention of plaintiff that while Jewell, in the performance of the duties of his employment, was operating the switch either to turn on or shut off the current, an arc was created and a spark emitted from the switch that fell on his powder begrimed clothing or person and set him afire.

Defendant admits the cause of the injury was the ignition of Jewell's clothing while he was operating the switch and in the original answer defendant al-

leged that the fire came either from a spark from the switch or from a match carelessly lighted by Jewell. Counsel for defendant argued on the former appeal as they do now, that inasmuch as the evidence of plaintiff showed that the injurious spark could have been thrown out from the fuse or motor as well as from the switch, plaintiff had failed to show a sufficient causal connection between the injury and the negligence averred. We rejected the argument on the ground that since there was no evidence to support the theory that a match had caused the injury, the answer must be considered as an admission that the fire came from the switch and that such admission relieved plaintiff of the burden of proving the fact covered by the admission. The amended answer in omitting this admission threw back on plaintiff the burden of proving not only the negligence of defendant in maintaining a defective switch for the use of its servant, but also that such negligence was the proximate cause of the injury. In other words plaintiff, to recover, must prove that a spark from the switch was the cause of the injury. Given the fact that the spark could have emanated from the switch, fuse, or motor, mere proof that the fire originated in the motor house would leave the causal relation of the injury to one or more of the pleaded acts of negligence in the domain of conjecture and speculation and would not satisfy the burden plaintiff must discharge in order to recover.

The evidence bearing on the issue of proximate cause adduced by plaintiff thus may be stated: A witness introduced by plaintiff who was defendant's chief engineer at the times of the construction of the plant and of the injury, testified that he urged defendant's president and superintendent to put in an oil switch on the ground that an open switch would be unsafe, but his suggestion was overruled. After its installation the switch in being opened or closed sometimes produced an arc and emitted sparks and there is

testimony to the effect that Jewell had complained to
the superintendent of the tendency of the switch to
throw sparks and that the superintendent told him
to "Go ahead, some day we will have an oil switch."
Immediately after being set ablaze, Jewell ran out of
the motor house which was about six feet southwest
of the corning mill and, intending to go to a hydrant
near the northeast corner of the mill, ran east along
the south end of the mill and turned north along the
east side. He passed by open doors and fire from his
person exploded the powder dust in the mill. Fire
from the explosion enveloped him and burned off all
his clothing leaving him naked. His skin was burned
and charred from head to foot. He fell down but arose
and proceeded towards the "wash house" six hundred
feet or more away. Two workmen who saw and heard
the explosion and heard his cries ran to him and as-
sisted him to the wash house. To them he exclaimed,
"I am done for now." Another workman attracted
by the explosion and outcries joined him on his way
to the wash house and immediately asked him how the
accident happened. He replied that he "got fire from
the switch and in getting around to the water he
tumbled and fell down and he thought if he had not
tumbled and fell down he would have made it and got
the fire out." He remained at the wash house until the
physician arrived when he was removed to a bed in the
office. There he remained until he died. Defendant
strenuously objected to the admission of testimony re-
lating to the statements made by Jewell on his way to
the wash house. At first the court sustained the ob-
jection but later decided to admit the evidence. The
importance of this ruling, the correctness of which is
challenged by defendant, is so great that we shall turn
at once to the consideration of its propriety. Though
it is clear that Jewell realized his death was certain
and imminent, his ante mortem statements relating to
the cause of his injury were not admissible as dying

declarations since the rule is well settled that such declarations cannot be regarded as evidence in civil actions.

"Modern decisions," says Judge Wagner in Brownell v. Railroad, 47 Mo. l. c. 244, "clearly establish the doctrine that the rule permitting dying declarations to be given in evidence aplies exclusively to criminal prosecutions for felonious homicides and has no reference to civil cases." The important question for solution is whether the declaration should be regarded as a verbal act of the dying man which formed a part of the whole *res gestae* or as a mere narrative of the past event.

As is said in Wigmore on Evidence (Vol. III, section 1745) "there are few problems in the law of evidence more unsolved than what things are to be embraced in those occurrences that are designated in the law as the *res gestae.*" The confusion is not due to any lack of soundness or clearness in the rules themselves but in the variant and antagonistic applications of them to be found in the reported cases. From the time the courts broke away from the illogical and often unjust doctrine that declarations of an injured person relating to the cause of his injury could not be treated as verbal acts, as a part of the *res gestae* where they were not contemporaneous with the main event, and substituted the more enlightened and sensible rules enlarging the scope of the *res gestae,* the decisions of the courts have been marked by a uniform acknowledgment of the soundness of the new rules but by variations in their applications ranging from the low tide of the old doctrine to the high tide of the extreme limit of the new.

In the opinion of the writer the clearest and most concise· enunciation of the modern doctrine to be found in the decisions of the courts of this state is in the following excerpt from the opinion in Leahey

v. Railway, 97 Mo. 1. c. 172: ''Care must be taken not
to make the field of *res gestae* too large or too con-
tracted. The better reasoning is, that the declaration,
to be a part of the *res gestae,* need not be coincident,
in point of time with the main fact. to be proved. It
is enough that the two are so clearly connected that
the declaration can, in the ordinary course of affairs,
be said to be the spontaneous exclamation of the real
cause. The declaration is then a verbal act, and may
well be said to be a part of the main fact or transac-
tion. Again, if the subsequent declaration and the
main fact at issue, taken together, form a continuous
transaction, then the declaration is admissible. Much,
therefore, depends upon the nature and character of
the transaction in question; for it may be, and often
is, of a continuing character. It cannot be said that
a mere subsequent declaration will of itself furnish
a sufficient connecting circumstance.''

It will be observed that Judge Black divides into
two classes the instances where declarations uttered
after the occurrence of the main event should be con-
sidered as verbal acts and not as narratives of past
events, viz: *First,* where the declaration is made at
a time and under circumstances which indisputably
proclaim its spontaneity, i. e., its complete subser-
vience to the influence of the main event, and, *second,*
where though subsequent to the main event, it clearly
was a part of the single transaction of which that
event was a part. In other words, if the declaration
be made before the close of the natural and inevitable
action of the injury, it should be regarded as a part
of the *res gestae,*—of the whole transaction—though
the main event has passed into the secondary and
consequential stage of its action. Applying these
rules Judge BLACK held that the declarations of the in-
jured boy, made when first he was picked up and was
surrounded by persons who witnessed the calamity,
were admissible as verbal acts, but that declarations

made by him after he had been removed from the scene of the injury to a neighboring house were inadmissible because they could not be said to have been spontaneous nor were they connected with the main fact in any way to make them a part of a single transaction to which that fact belonged. We regard this case as authoritative both in the enunciation of the true doctrine and in the application of its controlling rules. We made a similar application of these rules in the recent cases of Dunlap v. Railroad, 145 Mo. App. 1. c. 221 and in Hooper v. Insurance Company, decided at this term. In each of these cases we expressed the opinion that there was such a break in the chain of events immediately relating to the injury, and such an opportunity for the intervention of other influences over the minds of the injured persons than that of the main event, that the declarations could not be considered either as wholly spontaneous or as a part of the injurious transaction.

But there are essential and vital differences between the facts of the present case and those to which we have just referred. Here the declaration was made under circumstances which preclude the idea of any lack of spontaneity or of the intervention of any other influence than that of the injury and further the necessary resultant action of the calamity was in progress and it cannot be said that the transaction, as a whole, had passed into history. Jewell was fleeing from the scene of his deathstroke to a place of refuge. In awful agony and in the consciousness of impending death he declared the cause of his injury in the presence of witnesses who had heard and seen the explosion and had heard his spontaneous outcries. These facts in their legal significance closely resemble those considered by the Supreme Court in State v. Martin, 124 Mo. 514, and we say, as did Judge GANTT in that case that "no sensible man would reject such evidence in his own affairs," and add that no rule of evidence

compels us to reject as hearsay, evidence which every sensible man would accept in his own affairs. We conclude that the learned trial judge did not err in admitting the evidence and further we think this evidence, considered in connection with the other facts and circumstances of the injury we have mentioned in this and our former opinion, will support a reasonable inference that the injury was caused by a spark emitted from the switch. The facts that Jewell was operating the switch, that it was not provided with any appliance for preventing the throwing out of sparks and that owing to the shortness of the handle Jewell's hand and person were brought within the possible range of such sparks, give strong support to his declaration that his injury was caused by a spark from the switch and remove the issue of the causal relation of the alleged acts of negligence to the injury from the field of conjecture.

Counsel for defendant argue with much earnestness that the evidence of plaintiff fails to sustain the accusation of negligence in providing an unguarded switch. We have little to add to what we said on this subject in our former opinion. In the performance of the duty it owed its servant to exercise reasonable care to provide him a reasonably safe place in which to work and reasonably safe tools with which to work, the law required defendant to take into consideration the natural necessities and dangers of the service and to make a reasonable endeavor to install and maintain a switch that would be reasonably safe under the conditions that defendant knew or should have known would obtain in its operation. What would be reasonable care in one situation would be gross negligence in another. Had the switch been installed in the corning mill where, at times, the air was filled with powder dust, no one would have the hardihood to contend that to leave it unprotected by any spark quenching or arresting appliance would not have been the grossest

negligence.  Obviously defendant built a separate mo-
tor house for the purpose of preventing fire or sparks
thrown out by electric arcs from coming in contact
with powder dust but made no provision for prevent-
ing contacts between such fire and sparks and the
powder begrimed person of the operator whose duty
required him to come into close proximity with the
switch.

The evidence presents the issue of defendant's
negligence as one of fact for the jury to determine.

Passing to the issue of contributory negligence
we are satisfied with the treatment we gave this sub-
ject in our former opinion.  Defendant contends that
the evidence shows that the arc which produced the
spark was caused by Jewell's negligent disobedience
of orders respecting the use of the rheostat, but we
find room in the evidence for a reasonable inference
that the condition that appliance was found in after
the explosion which wrecked the motor house could
have been caused by the explosion and we would not
be justified in holding as a matter of law that it was
caused by Jewell's negligence.  The issue of contribu-
tory negligence was properly sent to the jury.  We
approve the action of the learned trial judge in refus-
ing to direct a verdict for defendant.

Complaint is made of the ruling of the court in
allowing Freeman Bailey to give expert testimony re-
lating to electrical switches and their installation in
places where high explosives are kept.  "An expert
is defined to be one who is skilled in any particular
act, trade or profession, being possessed of peculiar
knowledge concerning the same.  Strictly speaking an
'expert' in any science, art or trade is one who by
practice or observation has become experienced there-
in."  [Turner v. Haar, 114 Mo. 335.]

The witness was the chief engineer of defendant
when the plant was constructed and thereafter until
after the injury in question and, as such, was in prac-

tical charge of the electrical machinery and appliances. He had had eight years practical experience as an electrical engineer and had taken a course of study in that science. The fact that he had worked in no other powdermill did not disqualify him as an expert in the subject of the proper construction of electrical switches in places surrounded by high explosives. He qualified as an expert and the weight to be given his opinion was an issue for the jury to determine.

Further defendant complains of the refusal of the court to give the following instruction: ''The court instructs the jury that if they believe from the evidence that when defendant constructed its powder plant it made a contract with a reputable corporation of good standing engaged in the business of furnishing and installing electrical appliances in plants operated by electric power and that said contract required that the said appliances should be first class and suitable for the purposes for which they were furnished and that the switch in the motor house of defendant's corning mill was furnished and installed by such contractor under said contract and that defendant's officers in charge of said plant had no knowledge that said switch was not reasonably safe for the purpose for which it was furnished, then the defendant exercised ordinary care to provide a reasonably safe switch in said motor house and your verdict must be in favor of the defendant.''

This instruction is based on evidence introduced by defendant to the effect that the electrical machinery and appliances at the plant were installed by a reputable manufacturer to whom defendant gave *carte blanche* to put in the most suitable appliances.

The rule is that where an appliance furnished by the master is not complicated or dangerous and is purchased from a reputable and standard maker, the master is not required to make a minute inspection

of it. But if the appliance, though simple, is put to a hazardous use, the master owes his servant the duty of exercising reasonable care by the inspection of the appliance to ascertain if it is in a reasonably safe condition for the purposes of its intended use. [Tallman v. Nelson, 141 Mo. App. 478.] Defendant could not be held negligent for following expert advice about matters of expert knowledge but any reasonably careful person in its situation would have observed the practical results of the operation of the machinery and appliances installed by the manufacturer and on ascertaining that any of them was doing its work in an unsafe and dangerous manner would have taken proper steps to rectify the defect. The instruction under consideration wholly ignored this duty and was properly refused.

We have examined other points urged for a reversal of the judgment and find they are not well taken. The cause was fairly tried, the judgment is not excessive and accordingly it is affirmed. All concur.