## MARGARET UNREIN v. OKLAHOMA HIDE COMPANY, Appellant.

Division Two, October 9, 1922.

1. **NEGLIGENCE: Contributory As Matter of Law: Elevator Shaft: No Automatic Gates: No Light: Case Stated.** There was no elevator pit in the basement of defendant's warehouse, but a concrete approach, from the level of the floor and attaining an elevation of about two inches at the edge of the elevator, had been built to facilitate the use of the elevator. Thus when the elevator was in the basement its platform rested on the concrete floor, but at other times when a truck was run into the shaft its wheels would drop about two inches from this elevation. Deceased, experienced in the same kind of work, which was unloading hides from trucks brought down from the floor above, but not having worked in this basement for sometime, and only about an hour in the afternoon on which the fatal accident occurred, had unloaded a truck, and running it into the shaft, sat down on it, and the loaded elevator, descending by gravity from the first floor, caught and crushed him. Immediately upon being released he said, "I thought I was on the elevator." There was a skylight in the roof of the building, which threw light upon the elevator and into its shaft when it was in the basement, but this light was cut off when the elevator was at the first floor. There were some windows in the basement, and an electric light near the elevator shaft, but the shaft was fenced off on its two sides, and the light in the basement was dim and very poor near the shaft. Plaintiff's theory of the accident is that deceased, after unloading his truck, ran it to the shaft, and thinking the platform of the elevator was resting on the shaft's floor and the light being so dim that he could not see that the platform was not in position, ran the truck into the shaft, and that auto-

295 Mo.—23

matic gates would have prevented him from running the truck into the shaft while the elevator was at the first floor; and plaintiff, therefore, counts on two acts of negligence, namely, failure to comply with the city ordinance providing for enclosing or guarding all freight elevators with automatic gates, and failure to provide sufficient light around the elevator opening to have enabled deceased to see and know that the elevator platform was not at the basement landing. *Held*, that deceased cannot be held guilty of negligence as a matter of law, since had the elevator been protected by properly operating automatic gates it would have been impossible for him to have pushed his truck into the shaft without discovering that the elevator was not there, and it cannot be held that the absence of light from the skylight would have warned a man of ordinary prudence, possessing the experience of deceased and in the exercise of reasonable care for his own safety, that the elevator was not resting on the basement floor.

2. ———: ———: ———: ———: **Ordinance Requirement: Purpose.** The admitted violation by defendant of the ordinance requirement for enclosing or guarding all freight elevators with automatic gates must be taken into consideration in determining his liability for the death of a workman caused by the descent of an elevator in an unlighted shaft, into which the workman had run his unloaded truck and sat down on it. Such ordinances are enacted for the very purpose of protecting such workmen against their own thoughtless acts in the performance of their ordinary duties.

3. ———: ———: **Protection Against Dangerous Machinery: Purpose of Statutory Requirement: Thoughtlessness.** Workmen cannot be held guilty of negligence as a matter of law for the doing or failure to do many acts which would bar recovery if such acts were done in connection with machinery or appliances not coming within the provisions of statutes or ordinances requiring them to be equipped with guards and gates for their protection against their thoughtlessness or heedlessness of danger in the performance of their ordinary duties.

4. ———: **Defendant's Witnesses: Uncontradicted: Deceased's Experience.** The jury are not bound to believe the testimony of defendant's witnesses, although uncontradicted, that deceased had previously done the same kind of work in which he was engaged at the time of his fatal injury, or to draw the inference therefrom that he was familiar with all the lighting conditions of the elevator at the time he ran his truck into the shaft from the basement floor of the warehouse and it descended upon and crushed him; but in determining whether he was guilty of negligence in

pushing his unloaded truck into the shaft and sitting down on it just before the elevator descended, the jury have the right to consider the extent of his familiarity with the elevator and his surrounding conditions.

5. ———: **Unfenced and Unlighted Elevator Shaft: Warning Noise: Presumption of Ordinary Care.** Where there was a drop of about two inches from the approach to the concrete floor on which the platform of the elevator rested when in the basement, and deceased ran his empty truck into the unlighted shaft and sat down on it, and was crushed by the descending loaded elevator, whether the bump caused by the truck wheels dropping off the inclined approach, and whether the noise made by rolling loaded trucks on the floor above onto the elevator, should have warned him that the elevator was not in position on the basement floor, were questions for the jury to decide, assuming that he thought, as he stated immediately after he was removed from under the elevator, that his truck was resting at the time upon the elevator platform. Being clearly oblivious to his danger and no one having seen him at the time of his injury, the presumption that he was in the exercise of ordinary care must be indulged until the actual facts are shown in evidence.

6. ———: **Matter of Law: General Rule.** Unless the court can say that a man of ordinary caution and prudence, with the experience shown to have been possessed by deceased, and under like circumstances, would not have made the same mistake as the one which resulted in his death, it will not be held as a matter of law that he was guilty of such contributory negligence as bars a recovery.

7. **EVIDENCE: General Objection: Deposition.** It is not reversible error to admit the answer of a witness testifying by deposition to which only a general objection was offered at the time it was made.

8. ———: **Res Gestae: Declarations at Time of Accident.** Declarations made by deceased as soon as he was released from the elevator, where he was released within fifteen or twenty seconds after it descended upon and crushed him, are admissible as verbal acts or as a part of the *res gestae*. And where the objection is to their admissibility as a whole, an objection on appeal to particular portions of them which appellant did not move to strike out will not be considered.

9. ———: **Unobjectionable Answer: Striking Out: Other Testimony.** Refusal to strike out an objectionable answer made by respondent's witness on cross-examination is not reversible error where the same facts appear from the uncontradicted testimony of other

witnesses and no substantial right of appellant was prejudiced thereby.

10. ———: Conclusion: Striking Out: Cross-Examination. It is not error to strike out the answer of appellant's witness made on his cross-examination which is the witness's own conclusion, and "I would think it would be light enough to distinguish whether the elevator was there or not" is a conclusion of the witness.

11. ———: ———: ———: ———: Warning Noise: Comparative Experiences. A concrete approach inclined upward towards the elevator shaft and at its edge was two inches above the floor upon which the elevator rested when it was in the basement. Into this shaft and over this edge the deceased ran his empty truck while the elevator was at the upper floor. He sat down on the truck, and when the elevator descended by gravity he was caught and crushed. When he was released he immediately said, "I thought I was on the elevator." There was evidence that neither basement nor shaft was sufficiently lighted. One question the jury had to decide was whether, under the situation as it presented itself to deceased, the bump or noise caused by the wheels of the truck as they dropped off the inclined approach should have warned him that the elevator was not in position at the bottom of the shaft. A witness for plaintiff was asked on cross-examination if he "would notice any difference in driving a truck onto an elevator or onto this floor," to which he answered, "Well, I would, yes, sir." The witness further answered that "when the elevator starts to go down" there would be something to attract the attention of a person acquainted with the elevator; "he could hear the noise of the truck being pushed onto the elevator; also the rope revolving; the rope revolves whichever way the elevator goes, up or down." Held, that the first answer was not a statement of fact, but a conclusion of the witness, and the trial court did not commit error in sustaining an objection to it. Held, also, that, the witness being the foreman, experienced and familiar with the elevator, what he would have noticed did not measure the information deceased would have acquired from his short experience. Held, also, that the second answer was a conclusion of the witness on the very point the jury were to decide, namely, whether the noise made by the elevator in descending and the truck in being pushed onto the elevator and the movement of the rope should reasonably have attracted the attention of deceased to his perilous position, particularly if he thought he was on the elevator at the time; and it was not for the foreman, speaking out of his more extended experience, to decide that question for the jury.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson*, Judge.

AFFIRMED.

*J. M. Johnson, A. P. Leacy* and *Donald W. Johnson* for appellant.

(1)   The demurrer to the evidence should have been given.   Conceding for argument that the defendant was guilty of negligence in not providing a gate for the elevator opening, and that the light in the basement, when the elevator was at the top floor was dim, the negligence of defendant, if there was negligence with respect of these matters, it is not shown to have been the proximate cause of the injury.   Latapie Vignaux v. Saddlery Co., 193 Mo. 1; Poindexter v. Paper Co., 84 Mo. App. 352; Marshall v. United Rys. Co., 209 S. W. 931; Spiva v. Osage Coal & Mining Co., 88 Mo. 68; Moore v. Lindell Ry. Co., 176 Mo. 528; Murphy v. Lindell Ry. Co., 153 Mo. 252; Kappes v. Brown Shoe Co., 116 Mo. App. 154; Schmidt v. Railroad, 191 Mo. 215; Butz v. Cavanaugh, 137 Mo. 503; Saxton v. Railroad, 98 Mo. 494; Fore v. Railway Co., 114 Mo. App. 551; Kauffman v. Machin Shirt Co., 140 Pac. (Cal.) 15; Taylor v. Dupont Bldg. Corp., 99 Atl. (Del.) 284; Machies v. Hayden, 157 N. Y. Supp. 233; Gallagher v. Snellenburg, 210 Pa. St. 642. (2)   Contributory negligence of the injured servant will defeat negligence of the master in failing to comply with a statute or ordinance regulating the guarding of an elevator opening.   Authorities above; also Millsap v. Beggs, 122 Mo. App. 1; Hudson v. Railway, 101 Mo. 13.   (3)   Deceased was guilty of negligence in law, which directly contributed to his injury, and which is fatal to a recovery by plaintiff.   Authorities above; also Purcell v. Tennent Shoe Co., 187 Mo. 276; Beymer v. Packing Co., 106 Mo. App. 726; Dieboldt v. Baking Co., 72 Hun, 403.   (4)   The court committed prejudicial

error against defendant in the following rulings on evidence. (a) Witness Tilley on direct examination was allowed to testify: "Q. Considering the electric lights and natural lights in the basement, will you tell us, according to your best recollection the condition of the light in and about this elevator shaft at the time Mr. Unrein was hurt? A. Well, the light of course is poor." This was clearly a conclusion, and the objection should have been sustained. (b) Further, the witness Tilley was allowed to testify: "Q. When you looked down this shaft right after this happened, and saw Mr. Unrein, did you hear him say anything? A. Yes, he was talking. Q. I don't want to lead you, but what was it he said? Did he say anything about what he thought he was doing there? A. He said he thought he was on the elevator, that his back was broke, and that it would cost the Oklahoma Hide Company some money. Q. He said all those things? A. Yes, and he said he wanted some whisky." These utterances of the injured man were obviously not of the *res gestae,* that is to say, they lacked that spontaneity which is essential to the admission of such utterances. His call for whisky might have been spontaneous, but his declaration that it would cost the Oklahoma Hide Company some money shows that he had already begun to have other thoughts than those compelled by stress of anguish or by the action of the main event. Leahey v. Railway Co., 97 Mo. 165; Jewell v. Mfg. Co., 166 Mo. App. 562; State v. Reeves, 195 S. W. 1027. (c) If it was proper to admit the statement of the witness, "The light of course is poor," it certainly was proper for the court to have admitted the following testimony appearing in the cross examination of Tilley, to which the court sustained plaintiff's objection: "Q. Tell us in your own words the light and conditions in that shaft. A. When the elevator was down at the bottom that lets the lights down from the shaft from upstairs, which was fed by a sky light. When the elevator was down, I would say the light

is sufficient. Q. Would it be sufficient, the light in there, in the elevator? Tell us just what it would be without the artificial lights? A. I would think it would be light enough to distinguish whether the elevator was in there or not.'' (d) The court improperly sustained plaintiff's objection to the following question and answer asked the witness Tilley on cross examination respecting the driving of a truck up the incline and into the depression on the basement floor. ''Q. Would you notice any difference in driving a truck on to an elevator, or on this floor? A. Well, I would, yes,' sir.'' This was not a conclusion, but a statement of fact by the witness who was the foreman of the warehouse, and had full knowledge of and experience with all of its conditions. (e) Still more striking is the error in sustaining the objection to the following cross examination of the same witness: ''Q. And when the elevator starts to go down, would there be anything to direct a person's attention? A. Well, the man that is acquainted with the elevator certainly would. He could hear the noise of the truck being pushed on to the elevator. Also the rope revolving. The rope revolves whichever the elevator goes up or down.''

*W. W. McCanles* and *Hogsett & Boyle* for respondent.

(1) Defendant admits it was negligent as charged in the petition. Section 14, Ordinance 38919 of Kansas City; Sec. 7830, R. S. 1909. (2) The question of deceased's contributory negligence was a question for the jury. (a) In a case covered by a statutory provision enacted for the safety of employees, the question of contributory negligence of the employee rests upon a different basis than in cases not falling within such a statute. Shaw v. Kansas City, 196 S. W. 1098; Simpson v. Iron Works, 249 Mo. 389; Hughes v. Manufacturing Co., 188 Mo. App. 557; Brashears v. Iron Works Co., 171 Mo. App. 514. (b) The evidence presented facts

from which reasonable minds could reasonably draw different conclusions as to deceased's contributory negligence. That being so, the question was one for the jury. Ganey v. Kansas City, 259 Mo. 654, 662; Butz v. Const. Co., 199 Mo. 287; Huhn v. Railroad, 92 Mo. 440. (c) It was a question for the jury whether an ordinarily careful person might not have made the same mistake Unrein made in pushing his truck into the elevator shaft believing the elevator was at the landing. Southern Bldg. & Loan Assn. v. Dawson, 97 Tenn. 367, 56 Am. St. 804; Aiken v. Sidney Steel Scraper Co., 198 S. W. 1140; Baldwin v. Coffee Co., 216 S. W. 1001; Wendler v. Furnishing Co., 165 Mo. 537; McRickard v. Flint, 114 N. Y. 222; Beal-Doyle Dry Goods Co. v. Carr, 85 Ark. 479; Shoninger Co. v. Mann, 219 Ill. 242, 3 L. R. A. (N. S.) 1097; Joliffe v. Miller, 126 App. Div. 763, 111 N. Y. Supp. 406; Wilcox v. City of Rochester, 190 N. Y. 137, 17 L. R. A. (N. S.) 741; Grimmel v. Boyd, 94 Neb. 246, 142 N. W. 893; Peoples Bank v. Margolofski, 75 Md. 432, 32 Am. St. 403; Phillips Co. v. Pruitt, 26 Ky. L. Rep. 831, 82 S. W. 628; Sheyer v. Lowell, 134 Cal. 357; Colorado Mtg. Co. v. Rees, 21 Colo. 435; Fisher v. Cook, 23 Ill. App. 621; Burgess v. Stowe, 134 Mich. 208; Morrison v. Telephone Co., 69 Hun, 100, 23 N. Y. Supp. 257. (d) It was a question for the jury whether Unrein was guilty of contributory negligence in remaining in the shaft for the short interval of time that elapsed until he was caught by the elevator. Southern Bldg. & Loan Assn. v. Dawson, 97 Tenn. 367, 56 Am. St. 804. The elevator caught Unrein within three seconds from the time it left the first floor landing. Some allowance of time must be made for the human mind to grasp the situation and to realize the danger. Degonia v. Railroad, 224 Mo. 596; Burge v. Railroad, 244 Mo. 102; McGee v. Railroad, 214 Mo. 543; White v. Railroad, 159 Mo. App. 509. (e) No witness saw Unrein enter the shaft or saw him in the shaft until after he was caught by the elevator. In the absence of direct evidence the law

indulges the presumption that the deceased was in the exercise of ordinary care. Buesching v. Gas Light Co., 73 Mo. 233; Parsons v. Railroad, 94 Mo. 294; Stotler v. Railroad, 200 Mo., 6; Weller v. Railroad, 164 Mo. 198; Riska v. Railroad, 180 Mo. 187; Capp v. St. Louis, 251 Mo. 345; Collins v. Paper Mill Co., 143 Mo. App. 333; Stockton v. St. Ry. Co., 177 Mo. App. 286; Tanner v. Railways Co., 186 Mo. App. 264; Johnson v. Railroad, 150 Mo. App. 321; Meadows v. Life Ins. Co., 129 Mo. 93; Davis v. Railroad, 46 Mo. App. 189; Heine v. Railroad, 144 Mo. App. 443; Richter v. Railways Co., 145 Mo. App. 1; Newton v. Wabash, 152 Mo. App. 167; Pepperkorn v. Railway, 171 Mo. App. 709. (b) Contributory negligence is an affirmative defense and the burden was upon the defendant to prove it. Benjamin v. Railroad, 245 Mo. 613; Donovan v. Railroad, 89 Mo. 147; Stone v. Hunt, 94 Mo. 475. (3) Defendant's negligence was the proximate cause of the death. If defendant had provided a gate at the elevator shaft, or had provided sufficient light about the shaft, the injury would not have occurred. Therefore, defendant's negligence was the proximate cause of the injury. Harrison v. Light Co., 195 Mo. 623; Buckner v. Mule Co., 221 Mo. 709, Obermeyer v. Chair Co., 229 Mo. 111. (4) The court did not err in its rulings on the admission of evidence. (a) There was no error in refusing to exclude the answer of witness Tilley, "Well, the light, of course, is poor." Appellant did not object to the answer on the ground that it was a conclusion, so it cannot present that point to this court now. Cold Storage Co. v. Kuhlmann, 238 Mo. 705; Williams v. Loban, 206 Mo. 407; DeMaet v. Moving Co., 231 Mo. 220; Longan v. Weltmer, 180 Mo. 322. The answer was not a conclusion, but was au admissible statement of a condition. State v. Buchler, 103 Mo. 206; Rearden v. Railroad, 215 Mo. 135; State v. Robinson, 117 Mo. 664; Davis v. Street Ry. Co., 177 S. W. 1098; Fulton v. St. Ry. Co., 125 Mo. App. 244-247; Johnson v. Const. Co., 188 Mo. App. 122; Cheno-

weth v. Sutherland, 141 Mo. App. 275; Renfrew v. Good-fellow, 162 Mo. App. 350. Tilley had previously testi-fied to substantially the same fact without objection by defendant. Defendant brought out from its own wit-nesses the same character of answers and so cannot complain. Davidson v. Investment Co., 226 Mo. 29; Haffner Mfg. Co. v. St. Louis, 262 Mo. 663; Graves v. Chapman, 248 Mo. 83; Carpenter v. Railroad, 189 Mo. App. 164; Robertson v. Telegraph Co., 186 Mo. App. 281; Quarles v. Kansas City, 138 Mo. App. 45. (b) It was not error to admit the declaration of Unrein that he thought he was on the elevator. The declaration was a spontaneous outburst made instantly after his release from the elevator, within twenty to thirty seconds from the time he was caught, and was a part of the *res gestae*. State v. Martin, 124 Mo. 525; Brownell v. Railroad, 47 Mo. 244; Harriman v. Stowe, 57 Mo. 93; Leahy v. Rail-way Co., 97 Mo. 168; Giles v. Railroad, 169 Mo. App. 30; Shore v. Dunham, 178 S. W. 903; Jewell v. Mfg. Co., 166 Mo. App. 560; Greenlee v. Casualty Co., 192 Mo. App. 303; Vaughn v. Railroad, 177 Mo. App. 175; Knittel v. Railways Co., 147 Mo. App. 682; Stockman v. Railroad Co., 15 Mo. App. 514; State v. Lockett, 168 Mo. 485; Barker v. Railway, 126 Mo. 143. (c) There was no error in excluding the answer of defendant's foreman to the effect that when the elevator was down at the basement he would say the light was "sufficient." This was an improper opinion and conclusion of the witness and an invasion of the province of the jury. Dammann v. St. Louis, 152 Mo. 186; Fairgrieve v. Mo-berly, 29 Mo. App. 141; Marshall v. Taylor, 168 Mo. App. 247; Thompson v. Livery Co., 214 Mo. 499; Galla-gher v. Tipton, 133 Mo. App. 557; Miniea v. Cooperage Co., 175 Mo. App. 91; Hamilton v. Mining Co., 108 Mo. 364; Eubank v. Edina, 88 Mo. 650. (d) There was no error in excluding the answer of defendant's foreman as to whether he would notice any difference in driving a truck onto the elevator or onto the floor. The witness

had never pushed a truck, or seen one pushed, into the the bottom of the shaft with the elevator absent. So he was not qualified to testify whether he could have noticed the difference or not. Powell v. Railroad, 255 Mo. 445; Heinbach v. Heinbach, 274 Mo. 301. It was immaterial whether Tilley would have noticed the difference because he was thoroughly familiar with the elevator shaft. This had no tendency to prove that a total stranger to the premises would have noticed the difference. The answer complained of was an improper opinion and conclusion of the witness and an invasion of the province of the jury. Cases cited under paragraph (c). (e) There was no error in excluding the evidence of defendant's foreman as to whether there would be ''anything to attract a person's attention when the elevator starts to go down.'' The question called for an improper opinion and conclusion of the witness and was an invasion of the province of the jury. Cases cited under paragraph (c). The answer of the witness was mere repetition, the same facts having been previously put before the jury by the same witness. It is not error to exclude evidence that is mere repetition.

DAVID E. BLAIR, J.—Action for damages for death of the husband of plaintiff (respondent here), caused by alleged negligence of defendant. Trial to a jury resulted in a verdict for plaintiff for $8,000. After unsuccessful motions for a new trial and in arrest, defendant appeals.

Since appellant's main contention is that the trial court erred in not sustaining its demurrer at the close of all the evidence, a rather full statement of the facts must be made. Defendant was engaged at Kansas City in the business of buying and selling hides at wholesale, and plaintiff's husband was in its employ as a laborer. The injury which resulted in the death of deceased occurred at the warehouse of said company on October 15, 1918. Defendant's warehouse was a brick building con-

sisting of a main floor and basement, approximately 100 or 125 feet long by fifty feet wide. A freight elevator about the middle of the building along the east wall and about five by six feet in size afforded means for lowering and raising the trucks used in moving hides.

Deceased was assisting one Tilley, defendant's foreman, in moving hides from the first floor to the basement. Working together they had taken down a truck loaded with hides, and when same was partially unloaded Tilley returned to the first floor to weigh another truck load of hides, and deceased was left in the basement to finish unloading. After Tilley weighed the other truck load of hides the loaded truck was moved upon the elevator at the first floor, and two other employees rode the elevator as it descended into the basement. When it descended a portion of the way a scream was heard, and then a crash before the elevator could be stopped. On examination it was found that Unrein had been sitting upon his empty truck placed in a position squarely under the elevator and that he had been crushed by it. Two vertebrae were broken and the spinal cord was injured. His injuries resulted in instant paralysis and in his death four days later. Immediately upon being released from the elevator deceased exclaimed, "My God! my back is hurt; I thought I was on the elevator," or words to that effect. The elevator was operated by an electric motor, which was only used in lifting the elevator. It descended by gravity, and was controlled by means of a brake. The brake was operated by an endless rope which hung down in the basement and was at all times in such position as to be easily reached from the elevator. The basement had no elevator pit. The platform of the elevator rested on the concrete floor of the basement. A concrete approach, from the level of the floor and attaining an elevation of about two inches at the edge of the elevator, had been built to facilitate the use of the elevator. With the platform of the elevator at the first floor of the build-

ing a person in the basement pushing a truck up this approach would necessarily encounter a drop of a couple of inches when the wheels rolled over the top of the approach onto the space where the elevator rests when down in the basement.

There was a skylight in the roof of the building which threw light down upon the elevator and into the elevator shaft when the elevator was down in the basement. When the elevator was at the first floor this light was cut off. There were some windows on the west side of the basement forty-five or fifty feet from the elevator, and several electric lights, one north, one west and one south of the elevator. The evidence tends to show that the elevator shaft was fenced off on the north and south sides, and that only one of the lights was burning near the elevator, and that all the other lights in the basement and the windows were more or less dingy and dirty. Defendant's foreman was used as a witness for plaintiff and testified that the light was very poor down in the basement near the elevator shaft.

Deceased was twenty-seven years of age, and there is evidence that he had engaged in the same kind of work, but he had not been working there for sometime. He came back to work on the afternoon of the fatal accident, and had only worked an hour or so at the time he was fatally injured.

Plaintiff's theory of the accident is that after unloading his truck deceased ran it to the elevator shaft and, thinking the platform of the elevator was resting on the basement floor, ran his truck into the shaft without noticing the want of light from the skylight, and that the other light was so dim and insufficient that he could not see that the platform was not in position; that automatic gates would have prevented deceased from running the truck into the shaft while the platform was at the first floor. The petition counted upon six acts of negligence, but the case was submitted to the jury only on two grounds, to-wit, failure of the defend-

ant to comply with a section of the building code of Kansas City which provided for enclosing or guarding all freight elevators with automatic gates, etc., and failure to provide sufficient light around the elevator opening so that Unrein could see and know that the elevator platform was not at the basement landing. Defendant admits there is substantial proof of its negligence in these two particulars, and bases its contention that the case should not have been submitted to the jury because of contributory negligence on the part of deceased.

I. *Was Deceased Guilty of Contributory Negligence as a matter of Law?* Defendant contends that the light conditions were such that, if deceased had exercised any care at all, he would have known that the elevator was at the top floor and not down in the basement. If the elevator had been resting on the basement floor the light from the skylight above would undoubtedly have been sufficient to have disclosed its position. The question is whether the absence of light from the skylight would have warned a man of ordinary prudence, possessing the experience of deceased and in the exercise of reasonable care for his own safety, that the elevator was not resting on the basement floor. Had the elevator been protected by automatic gates properly operating, it would have been impossible for deceased to have pushed his truck into the space usually occupied by the elevator without discovering the elevator was not there. Defendant concedes its failure to equip the elevator with such gates. The effect of the admitted violation by defendant of the city ordinance must therefore be taken into consideration in determining the negligence of deceased as a matter of law.

Statutes which require guarding of dangerous machinery and that automatic gates be furnished at elevator entrances, are enacted for the very purpose of protecting those coming within their provisions against their own thoughtless acts in the performance of their ordinary duties. They contemplate that at times such

persons will fail to observe the precautions necessary to protect them in the absence of guards, gates, etc. They cannot be held to be guilty of negligence as a matter of law for the doing or the failure to do many acts which would bar recovery if such acts were done in connection with machinery or appliances not coming within the provisions of such statutes. The ordinance required automatic gates. The purpose of such requirement was to keep persons from falling into the shaft or being struck by or caught in the elevator. The only danger in the basement came from the descending elevator—the very thing which caused deceased's injuries. His act in entering the shaft while the elevator was on the first floor was therefore of the character the ordinance requiring gates was designed to protect him against and he came within the rule above announced. The ordinance was designed to protect heedless acts on his part *liable to be committed by men of ordinary prudence under a like situation.* Support for these views is found in the following cases: Shaw v. Kansas City, 196 S. W. 1091, l. c. 1098; Simpson v. Iron Works, 249 Mo. 376, l. c. 389; Hughes v. Contracting & Mfg. Co., 188 Mo. App. 549, l. c. 557.

In determining whether, when deceased pushed his truck in under the elevator and sat down on it, he was guilty of negligence, the jury had the right to consider the extent of his familiarity with the elevator and his surrounding conditions. Tilley, the foreman, testified that deceased went to work at noon on the day of the accident and had not worked there before while he was there, but he thought deceased said he had worked there before. This witness did not undertake to testify to facts showing that deceased was familiar with the effect of light from the skylight. Hays, one of defendant's witnesses, said that deceased had worked there a couple of weeks during the preceding month and that most all the work he did was helping bring the hides down (presumably the same operation in which he was engaged

at the time of the accident). Chilcoat, another witness for the defendant, testified that deceased had worked there about a month off and on, not steady, but he did not say what work he was doing. The jury was not bound to believe the testimony of defendant's witnesses, although uncontradicted. [Gannon v. Laclede Gas Light Co., 145 Mo. 502; St. Louis Union Trust Co. v. Hill, 283 Mo. 278; Keller v. Butchers' Supply Co., 229 S. W. 173.] The jury was not required to believe the uncontradicted testimony of defendant's witnesses tending to show that deceased had previously done the same character of work and, as an inference therefrom, that he was familiar with all the lighting conditions; nor does the testimony of Tilley that deceased made several trips with his truck on the elevator prove conclusively that he had observed the effect of the light from the skylight when the elevator was down.

It was a question for the jury whether the bump caused by the wheels of the truck dropping off the inclined approach to the elevator should have warned deceased that the elevator was not in position on the basement floor. The same thing is true of the noise made in rolling the loaded trucks over the first floor and onto the elevator. Such noises might have become confused in the mind of deceased with other movements overhead, and it was for the jury to say whether he should reasonably have been warned thereby, assuming that he thought his truck was resting at the time upon the elevator in position on the basement floor. The fact that no other employee with a truck was found by deceased at the elevator when he pushed his truck to the shaft is not controlling. If the elevator had in fact been resting upon the basement floor, the other truck might have been pushed away from the shaft before he arrived. No one saw the deceased from the time he pushed his truck toward the elevator, until after he was injured. Therefore, the presumption that he was in the exercise of ordinary care must be indulged until the actual facts

are shown by the evidence. Clearly either deceased was oblivious to the danger of his situation, or he voluntarily permitted the injuries to be inflicted upon him. It will be presumed he did not intend to commit suicide. His exclamation after his release shows that he thought he was on the elevator.

We have examined the cases upon which defendant relies. Some of them announce the general and unchallenged rule that where the negligence of the servant and the master concur, there can be no recovery. In the elevator cases cited, where it is held there was no liability, the facts were quite different. In Latapie-Vignaux v. Saddlery Co., 193 Mo. 1, the injured employee was himself operating the elevator at the time he was injured and knew it was not on the floor where he was standing. He was injured in attempting to bring it to that floor. In Poindexter v. Paper Co., 84 Mo. App. 352, the injured employee ran the elevator to an upper floor and left it to go after some goods, after raising the guard and leaving it up. Meanwhile, some other employee lowered the elevator. He returned and entered the shaft through the opened gate, fell and was injured. Somewhat similar were the facts in Kauffman v. Shirt Co., 140 Pac. (Cal.) 15, and Gallagher v. Snellenburg, 210 Pa. St. 642. In Marshall v. Railways Co., 209 S. W. 931, the plaintiff, a boy of fifteen, jumped into an open elevator shaft partially unguarded. He had no duty in connection with the elevator and did not enter the shaft to use the elevator, but to assist another in opening a door. In Spiva v. Coal & Mining Co., 88 Mo. 68, deceased was killed by falling down an unguarded mining shaft in full daylight. He was employed at the top of the shaft. The cage could only be lowered after the catches had been released by the deceased, and therefore, he must have known the cage was not at the top. In Kappes v. Shoe Co., 116 Mo. App. 154, employees crowded against and lifted the gate guarding the elevator, and nine of them were pushed until they fell down into the shaft. Taylor v. Building Corporation, 99 Atl. (Del.) 284, does

not seem to have been based on violation of statute and plaintiff was held guilty of contributory negligence. He knew the elevator door was open. The same is true in Machiea v. Hayden, 157 N. Y. Supp. 233. In all of the above cases it was held there could be no recovery on account either of the negligence of the injured person or his fellow-servants. In each of them the injured either knew where the elevator was or by his own positive negligent act made the accident possible.

In the case before us, if automatic gates in working condition had been furnished, the deceased's inattention. would not have resulted in his injury. It was for the jury to say, under all the facts and circumstances shown in the evidence, whether deceased was guilty of negligence in going into the elevator shaft and remaining there. Unless we can say as a matter of law that a man of ordinary caution and prudence, with the experience shown to have been possessed by the deceased, would not have made the same mistake under like circumstances, we cannot interfere with the judgment. This we cannot say, and, not being able to say so, it follows that the trial court did not err in submitting the case to the jury.

II. *On the Admission and Exclusion of Testimony.* (a) The testimony of Harry H. Tilley, the foreman above referred to, was presented by deposition. When General Objection. it was read to the jury, the following occurred:

"Q. Considering the electric lights and natural lights in the basement, will you tell us, according to your best recollection, the condition of the light in and about this elevator shaft at the time Mr. Unrein was hurt? A. How is that? I don't understand.

"(Last question read by the reporter.)

"A. Well, the light of course is poor.

"(The above and foregoing questions and answers were objected to by the defendant and objections overruled by the court.)

"To which ruling of the court the defendant by its. counsel then and there duly excepted."

Appellant now contends that the answer of the witness is a conclusion and that the objection made to the reading of the answer should have been sustained. The objection made at the time was general and not that the answer was a conclusion. The objection was not sufficiently specific and no error was committed in overruling it. [State v. Young, 153 Mo. l. c. 449; State v. Westlake, 159 Mo. l. c. 678; State v. Decker, 217 Mo. l. c. 325; Longan v. Weltmer, 180 Mo. 322.]

(b) During the further reading of the deposition of witness Tilley, the following occurred:

Res Gestae.

"MR. JOHNSON: The defendant objects to the following questions and answers, being testimony relating to the declarations of the injured man after he was taken out from the elevator on the ground that the character of the declarations themselves show they were not a spontaneous utterance of the injured man, but a product of consideration and thought. The objections go from the fifth question on page 34 of the deposition down to the bottom of that page.

"Said questions and answers objected to by the defendant are as follows:

" 'Q. When you looked down this shaft right after this happened and saw Mr. Unrein, did you hear him say anything? A. Yes, he was talking.

" 'Q. I don't want to lead you, but what was it he said? Did he say anything about what he thought he was doing there? A. He said he thought he was on the elevator, that his back was broke, and that it would cost the Oklahoma Hide Company some money.

" 'Q. He said all those things? A. Yes, and he wanted some whiskey.

" 'Q. He wanted some whiskey? A. Yes, sir.

" 'Q. And did you go get the whiskey for him? A. Yes, sir.'

"THE COURT: The objections are overruled.

"To which ruling of the court the defendant, by his counsel, then and there duly excepted."

Appellant contends that the declarations of the injured man were not part of the *res gestae,* particularly the remark that it would cost the Oklahoma Hide Company some money, and contends such remark shows that Unrein "had already begun to have other thoughts than those compelled by stress of anguish or by the action of the main event."

Appellant relies on Leahy v. Railway Co., 97 Mo. 165. The declarations there under consideration and ruled inadmissible as part of the *res gestae* were made five and again twenty minutes after the accident. At foot of page 172, BLACK, J., said: "Applying these declarations to the present case, it is clear that what the boy said as to how he got under the car, when first picked up, was properly received as evidence of the cause of his injuries. He was then at the scene of the accident, surrounded by persons who witnessed the calamity, and his declarations then made were verbal acts, though made after the accident had happened."

Appellant also relies on Jewell v. Manufacturing Co., 166 Mo. App. 555, l. c. 562. In that case declarations made by deceased, after running several hundred feet with his clothing in flames and after he had fallen to the ground and assistance had reached him, that his clothing "got fire from the switch" were held part of the *res gestae.*

Appellant also relies upon State v. Reeves, 195 S. W. (Mo.) 1027. The testimony there held not a part of the *res gestae* was that, within an hour or two after the fatal encounter between defendant and deceased and before defendant knew that the assault had proved fatal, defendant rode several miles to a justice of the peace and swore out a warrant for the arrest of the deceased. Clearly such acts and declarations were too remote to be a part of the *res gestae.*

The declarations of deceased were made as soon as he was released from the elevator and it took only fifteen or twenty seconds to release him after he was struck. Such declarations were part of the *res gestae* and properly admitted. [Brownell v. Pacific Railroad Co., 47 Mo. l. c. 244; State v. Martin, 124 Mo. l. c. 524; Jewell v. Manufacturing Co., supra.] Without determining the admissibility of the portion of the words spoken by deceased which related to the accident costing the defendant money, we think that, if such portion of the declaration was not proper, the defendant should have moved to strike it out. The objection to the statement as a whole, was not well taken.

(c)   Appellant contends that the trial court erred in striking out of the cross-examination

Cross-Examination: Conclusion.

of the witness Tilley the following questions and answers:

"Q.   Tell us in your own words, the lights and conditions in that shaft? A.   When the elevator was down at the bottom that lets the light down the shaft from upstairs, which was fed by a skylight. When the elevator was down I would say that the light was sufficient.

"Q.   Would it be sufficient, the light in there in the elevator? Tell us just what it would be without the artificial lights?

"Mr. Smith: You mean with the elevator down?

"Mr. Leacy: Yes, I was talking about the elevator down.

"A.   I would think it would be light enough to distinguish whether there was an elevator there or not."

Plaintiff objected to the foregoing for the reason that the questions called for an improper opinion and conclusion on the part of the witness. The first sentence of the first answer appears to be unobjectionable, and to have been in response to a proper question. The court did not commit reversible error in ruling it improper, because the same facts appear from other witnesses and are uncontradicted, and we cannot see how the substan-

tial rights of the defendant could possibly have been prejudiced thereby. The last sentence of the first answer was the expression of a conclusion of the witness. The second question clearly called for the conclusion of the witness and the answer expressed such conclusion.

Warning Noise.     (d) In the cross-examination of witness Tilley the following question and answer appeared:

"Q. Would you notice any difference in driving a truck on to an elevator or on to this floor? A. Well, I would, yes, sir."

Plaintiff's counsel objected to the question and answer as calling for an improper opinion and conclusion on the part of the witness. The trial court sustained the objection and defendant excepted. Defendant contends the answer was not a conclusion, but a statement of fact and should have been read to the jury. We think the court did not err in striking out the question and answer. One of the questions the jury had to decide was whether, under the situation as it presented itself to deceased, the bump caused by the wheels dropping off the inclined approach should have warned him that the elevator was not in position on the basement floor and it was not proper for the witness to decide that question for the jury. Besides, what the foreman, with his experience and his familiarity with the elevator would have noticed, did not necessarily measure the information deceased would acquire from the same incident. The assignment is overruled.

(e) On the objection of plaintiff the court struck out of the deposition of witness Tilley the following question and answer: "Q. And when the elevator starts

Conclusion. of Witness.     to go down, would there be anything to attract a person's attention? A. Well, the men that is acquainted with the elevator certainly would. He could hear the noise of the truck being pushed on to the elevator. Also the rope revolving. The rope revolves whichever way the elevator goes, up or down."

The objection made by plaintiff was that the question and answer called for the opinion of the witness and was a repetition. It was one of the questions for the jury to decide, whether the noise made by the elevator in descending and by the truck in being pushed on to the elevator and the movement of the rope should reasonably have attracted the attention of the deceased to his perilous position, particularly if he thought he was on the elevator at the time. It was not for the foreman, speaking out of his greater and more extended experience, to decide that question for the jury. The objection was properly sustained.

III. The foregoing disposes of all the assignments of error made in this court and it results that the judgment below should be affirmed.

It is so ordered. All concur.