OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1905.

*(Continued from Volume 192.)*

## LATAPIE-VIGNAUX, by next friend, v. ASKEW SADDLERY COMPANY, Appellant.

In Banc, January 23, 1906.

1. **ELEVATORS: Manufacturing Buildings: Protecting Opening: Meaning of Statute.** The statute (Laws 1891, p. 159), requiring all openings to elevators in manufacturing buildings, etc., to be protected by trapdoors or guard-rails, etc., and all due diligence to be used to keep such trapdoors closed except when in actual use, was not meant to prescribe such precautions in order to protect persons whose duty it is to operate the elevator, while doing so. It leaves the duty of the master to the servant employed in operating the elevator the same as it was at common law. It was meant to prevent persons who work around the elevator while not in use from falling into the elevator shaft.

2. **———: Action Under Statute: Shifting Position.** Where the case was tried in the lower court upon a petition and instruction which predicated plaintiff's right to recover under the statute relating to the protection of elevators when not in use, he will not on appeal, when the facts reveal that the elevator was in use, be permitted to recover as for common-law negligence.

3. **———: ———: Common-Law Negligence: When Not Available.** A party who predicates his right of recovery upon a statute, and does not invoke the aid of the common law, cannot invoke the rule that the statute did not destroy his common-law right to recover.

193 Sup—1] (1)

4. ———: ———: **Recovery Under Statute.** The statute (Laws 1891, p. 159; sec. 6435, R. S. 1899) does not give to an employee the right to recover for negligently leaving open the opening to an elevator hatchway while the elevator is in actual use. And if plaintiff's own evidence establishes the fact that it was in actual use at the time he was injured, and being operated by himself, his action based on the statute must fail.

Appeal from Jackson Circuit Court.—*Hon. James Gibson, Judge.*

REVERSED.

*Lathrop, Morrow, Fox & Moore, Thomas H. Reynolds, James P. Gilmore, George J. Mersereau* and *Gardiner Lathrop* for appellant.

(1) Plaintiff, in his testimony, swore and claimed that at the time he was injured he was in the act of using the elevator, which was, therefore, if plaintiff's story be accepted, in actual use at the time of the alleged accident, and defendant was not, therefore, guilty of any negligence with respect thereto at the time and in the manner claimed by plaintiff, and he cannot recover in this action. Secs. 6435, 6450, R. S. 1899; Malloy v. Real Estate Ass'n, 156 N. Y. 205; Poindexter v. Paper Co., 84 Mo. App. 352; Connell v. Tel. Co., 108 Mo. 459; State v. Bryant, 90 Mo. 137; State v. Howard, 137 Mo. 289; State v. Gritzner, 134 Mo. 512; Dudley v. Tel. Co., 54 Mo. App. 391. (2) Even if defendant had not complied with the statute in keeping the guard-rail in place (which we deny) plaintiff claimed that he had at times seen it raised when he claims it should have been down; that he knew it was raised shortly prior to the time of the alleged accident, and was so raised when he went to use the elevator, and he therefore, waived any provisions of the statute with reference to keeping the same down or closed. Spiva v. Coal & Mining Co., 88 Mo. 68; Higgins Carpet Co. v. O'Keefe, 79 Fed. 900; Freeman v. Paper Mill Co., 24 N. Y. Supp. 403;

Graves v. Brewer, 38 N. Y. Supp. 566; White v. Lith. Co., 131 N. Y. 636; Knisley v. Pratt, 148 N. Y. 372; Bailey's Personal Injuries relating to Master and Servant, secs. 504 and 505; 20 Am. and Eng. Ency. Law (2 Ed.), 118; Railroad v. Williams, 39 S. W. 967; Portance v. Coal Co., 77 N. W. 875; Bonnett v. Railroad, 89 Tex. 250; Seldomridge v. Railroad, 46 W. Va. 569; Hughes v. Railroad, 27 Minn. 137; Bengston v. Railroad, 47 Minn. 486; Bancroft v. Railroad, 67 N. H. 466; Linton Coal & Mining Co. v. Pearson, 43 N. E. 651; Goldthwait v. Railroad, 160 Mass. 554; Murch v. Thos. Wilson, Son & Co., 168 Mass. 408.

*Walsh & Morrison* and *Virgil Conkling* for respondent.

(1) Defendant violated a positive statute and its act in so doing was negligence *per se*. R. S. 1899, sec. 6435; Gratiot v. Railroad, 116 Mo. 463; Calliot v. Mfg. Co., 71 Mo. App. 171; McNown v. Railroad, 55 Mo. App. 590; Lore v. Mfg. Co., 160 Mo. 621; Reynolds v. Hindman, 32 Ia. 146; Devlin v. Gallagher, 6 Daly 494; Kelley v. Anderson, 15 S. D. 107. (2) The evidence shows that the negligence of the defendant, continuing down to the very instant of the catastrophe, was the proximate cause of the injury. Settle v. Railroad, 127 Mo. 341; Schlereth v. Railroad, 96 Mo. 515. (3) Defendant's negligence in failing to guard the hatchway, and not the plaintiff's loss of balance, was the proximate cause of the accident. Lore v. Mfg. Co., 160 Mo. 625; Musick v. Dold, 58 Mo. App. 322; Henderson v. Kansas City, 177 Mo. 477; Taylor v. Felsing, 164 Ill. 338. (4) Where a corporation has been guilty of negligence in violating a duty imposed by statute, contributory negligence must be clearly shown in order to constitute a defense. Petty v. Railroad, 88 Mo. 321; Russell v. Receiver, 70 Mo. App 97; Jennings v. Railroad, 112 Mo. 276; Bluedorn v. Railroad, 108 Mo. 449; Bartlett v. Coal Mining Co., 68 Ill. 174. (5) Plaintiff

did not waive the provisions of the statute. Bluedorn v. Railroad, 108 Mo. 447. (6) It was no part of plaintiff's duty to lower the guard-rail, particularly as he had never been instructed to do so. Reber v. Tower, 11 Mo. App. 207; Welsh v. Butz, 202 Pa. St. 65; Allen v. Jakel, 115 Mich. 486. (7) The verdict is authorized under the common law, and the statute should not be held to destroy the common-law remedy. Byalls v. Mechanic's Mills, 150 Mass. 195; 20 Enc. of Pl. & Pr., 603; Col. Mining and E. Co. v. Mitchell, 26 Col. 284; Senn v. Railroad, 108 Mo. 152; Wise y. Ackerman, 76 Md. 375; Curtis v. McNair, 173 Mo. 283; Reichla v. Gruensfelder, 52 Mo. App. 58; Welsh v. Butz, 202 Pa. St. 65.

MARSHALL, J.—This is an action for $35,000 damages for personal injuries received by the plaintiff on the 16th of July, 1901, by falling into an elevator shaft on the premises of the defendant, on Third and Delaware streets in Kansas City, Missouri. There was a verdict and judgment for the plaintiff for $7,500, and after proper steps the defendant appealed.

THE ISSUES. The petition alleges that the defendant is a domestic corporation, owning and operating a manufacturing, mechanical and mercantile plant; that plaintiff, at the time of the accident, was in the employ of the defendant, as a common laborer, and was thirteen and a half years old; that, acting under orders of the defendant, and while engaged in his duties as such laborer, he proceeded to the fourth floor of the building for the purpose of loading horse collars upon a certain elevator in said building, and bringing the same, on the elevator, to a lower floor; that while so engaged, his duty compelled him to get into close proximity to the elevator shaft, and, while in the act of causing the elevator platform to arise from the lower floor by pulling on

the rope provided for that purpose, on account of the negligence of the defendant, he lost his balance, fell through the elevator shaft and was seriously and permanently injured.

The court withdrew from the jury all allegations of negligence on the part of the defendant except the charge that the defendant negligently and carelessly failed and neglected to protect the hatchway of the elevator hole on the fourth floor by good and sufficient safety catches, or strong guards or rails at least three feet high, and further instructed the jury that defendant was not guilty of negligence in that regard, if the jury believed from the evidence that the plaintiff was actually using the elevator at the time he was hurt.

The answer is a general denial, with a plea of contributory negligence and a plea of assumption of risks. The reply is a general denial.

The uncontroverted facts are, that the plaintiff was employed by the defendant, and had been so employed for four months before the accident, to wash horse collars, shine them and stamp them, and that his station for so doing was on the first floor of the building; he was a bright, intelligent boy; had worked at the Armour Packing House off and on for four months; had worked at Culp's drugstore for about a month, and had worked at a candy store for about a month. In the rear of defendant's old building there is a freight elevator extending from the basement to the fourth floor, which had no cage thereto but consisted of a floor or platform with the upright beams and rods usually employed in the construction of freight elevators. In the basement the elevator is not inclosed except by the rock wall at the back thereof. On the first floor the elevator is completely inclosed from the floor to the ceiling, and the entrance to the elevator is through a door which worked on ropes and pulleys like a window, and on the inside, had a cross-beam guarding the opening when the door was raised. On the second floor the shaft was

completely inclosed, and the entrance to the elevator was
by a double door, which closed with a catch at the top,
and likewise had a bar across the opening on the inside
of the door. The same condition existed on the third
floor. On the fourth floor the elevator shaft was not in-
closed, except by posts that helped to support it. Around
the sides there were piled a large number of horse col-
lars placed so as to prevent anyone from falling into the
shaft.   Across the front of the elevator there was a
two-by-four oak or pine bar, which worked on a hinge
and could be raised on hinges when it was necessary to
use the elevator.   The elevator was run by means of
ropes, which extended from the basement to the fourth
floor and connected with the machinery in the basement
for moving the elevator.   In order to start the elevator
it was necessary to pull down on one of these ropes,
which could be reached by a person   standing on the
floor and extending his arm out into the shaft.

Darcey Smith was the defendant's foreman, and
had employed the plaintiff.   Fred Martin was the
"straw boss" or assistant foreman, and was likewise
the order clerk, and worked on the first and fourth
floors.   Fred Wagner was the straw cutter, and worked
on the second floor, and John Teller was the padder,
and worked on the third floor.

The orders were received by the order clerk about
nine to half-past nine o'clock every morning.   On the
morning of the accident there were no unfilled orders
left over from the day before.   The various employees
were engaged in cleaning and straightening the factory
preparatory to the business of the day.   They went to
work at seven o'clock in the morning.

The case made by the plaintiff tends to prove that
he went to work as usual about seven o'clock in the
morning, and that Smith, the foreman, ordered him to
go to the fourth floor and get two   dozen collars and
bring them down on the elevator to the first floor; that
he carried the collars, six at a time, from the racks   on

which they hung, and piled them on the floor close to
the elevator shaft; that the bar across the elevator shaft
was raised; that he leaned over the shaft and took hold
of the rope with both hands so as to bring the elevator
up to the fourth floor, the elevator at that time being
between the first and second or the second and third
floors; that he had to use both hands because he could
not start the elevator by pulling on the rope with one
hand; that while pulling on the elevator rope, and just
after he got the elevator started, he lost his balance and
fell; that he struck the elevator, tried to hold to it,
failed, and fell through the opening between the floor
of the freight elevator and the inclosure around the ele-
vator shaft, and landed in the elevator hole in the base-
ment of the building; that the space between the floor
of the elevator and the inclosure of the elevator shaft
was large  enough for  the body of his  counsel, Mr.
Walsh, a man weighing about two hundred pounds, to
pass through; that when he was first employed the then
assistant foreman, Mr. Kelley, took him to the fourth
floor and instructed him how to run the elevator, and
that on several occasions prior to the accident his im-
mediate superior, Martin, had sent him to the fourth
floor to bring collars down on the elevator to the first
floor; that on all except one or two occasions when he
had been on the fourth floor, the bar at the entrance to
the elevator was up and not in place; that on other oc-
casions he had gone to the fourth floor to help clean it
up, and that on such occasions he had noticed that the
bar was not down or in place.   Two other young men,
or boys, also testified that while they were working at
the defendant's factory, they saw the plaintiff using
the elevator and bringing collars down on it.

The case made by the  defendant tends to prove
that it was no part of the plaintiff's duty to bring col-
lars from the fourth floor to the first floor; that Mar-
tin had, prior to that time, taken the plaintiff to the
fourth floor, using the stairway in so doing, to have him

assist in sweeping and cleaning the floor, but never for the purpose of assisting in carrying collars; that on several occasions Martin and Wagner and Teller had caught the plaintiff playing on the elevator, and had made him get off of it, and had reported him to the foreman, Smith, who lectured him and told him to keep off of the elevator or he would discharge him; that Smith, Martin, Teller and Wagner were the only persons who were authorized to run the elevator at all, Smith being the general foreman, Martin having charge of the men on the first floor, Wagner on the second, and Teller on the third, and the fourth floor being used for storing collars; that on the morning of the accident the plaintiff reported for work on the first floor; that there were no orders left over from the night before to be filled; that on the morning of the accident Teller found the elevator at the second floor with a bale of straw on it that had been left there the night before; that he removed the bale, took the elevator to the third floor, put a truck load of sweepings on it, lowered it to the second floor and wheeled the truck to the engine room and then back to the elevator, and pulled the elevator to the third floor where he turned it over to Martin, who lowered it to the second floor. Martin put some collars on it and lowered it from the second to the first floor. Teller wanted to use the elevator to get a roll of leather from the basement and found it at the first floor with the collars on it. He asked Martin who would help him to unload the collars and Martin said the plaintiff would. Teller looked for the plaintiff and could not find him. Martin, under whom the plaintiff immediately worked, had not seen him that morning. Wagner, whose place of work was on the second floor within a few feet of the elevator, had not seen plaintiff that morning. Teller lowered the elevator to the basement to get the roll of leather. As he was nearing the. bottom he heard a low cry or moan, which he first thought was a cat, but when he got near the bottom he

heard the moan again, and thinking it was from a human being, stopped and raised the elevator, got off of it and discovered the plaintiff at the bottom of the elevator shaft lying on his face, with a wound in the back of his head, and unconscious.

Neither Smith, Martin, Wagner nor Teller, who were in and around the elevator on the various floors of the building, had seen plaintiff on the elevator that morning, nor had they heard him fall in the elevator shaft. Smith had seen the plaintiff when he first reported for work that morning, but said that he did not order the plaintiff to go to the fourth floor for the collars, and that it was no part of the plaintiff's duty to use the elevator, and that there were no orders left over from the night before, and the orders for the day had not then been received. Ted Noland, another employee, testified that he returned to the building about half-past seven o'clock with some meat for the cat, and found the plaintiff at work at his place in the front of the store, and asked him where the cat was and he told him; that as he went to the back of the store to go upstairs, the plaintiff accompanied him as far as the elevator, where he left him, and that when he got up to the top of the stairs Martin asked him about the plaintiff. On the objection of the plaintiff, Noland was not permitted to say what answer he made or what information he gave Martin about the plaintiff. Munsell, another employee, testified that he arrived at the office late that morning and saw the plaintiff at his place on the first floor, about half-past seven o'clock; that within a few minutes thereafter he learned of the accident to the plaintiff.

None of the employees of the defendant, who were called as witnesses, saw the elevator on the fourth floor that morning. On the contrary, those who were called testified that it was in constant use on the third, second and first floors of the building from seven o'clock until the time of the accident, by Martin, Wagner and Teller.

The defendant further showed that the crossbar at the front of the elevator on the fourth floor was systematically kept closed, and that the foreman inspected it at least once every day to see that such was the case. Immediately after the accident an examination was made and it was found that the said crossbar was down and in its place covering the opening to the elevator shaft and that no one else had been on the fourth floor that morning between the time the plaintiff says he was sent there and the time when he was discovered in the elevator shaft in the basement.

The plaintiff testified that there was no one present when Smith, the foreman, gave him the order to go to the fourth floor and bring down the collars. The foreman Smith testified that he gave no such order to the plaintiff. The plaintiff further testified that Smith and Martin, the assistant foreman, had frequently sent him to the fourth floor for collars previously, but they both denied having done so. The plaintiff also testified that the foreman, Smith, as well as Kelley, had taken him to the fourth floor and instructed him how to run the elevator. The foreman, Smith, denied that any such thing had occurred. Kelley was no longer in the employ of the defendant and was not a witness. The plaintiff testified that other boys had also used the elevator. This was also denied by the other employees of the defendant. The defendant introduced testimony showing that by actual measurement the space between the floor of the elevator and the inclosure of the elevator shaft was twelve and three-quarters inches. Over the objection of the defendant, the plaintiff was permitted to introduce in evidence the American Experience Tables of Mortality, and this is assigned as error. The plaintiff denied that he had ever played with the elevator, or been caught playing with it, or that he had been reported to the foreman therefor, or that the foreman had reprimanded him for so doing.

At the close of the plaintiff's case, and again at the

close of the whole case, the defendant demurred to the evidence, the court overruled the demurrers and the defendant excepted.

## I.

The first error assigned is the ruling of the trial court in overruling the demurrers to the evidence.

This is an action under section 6435, article 17, chapter 91, Revised Statutes 1899, relating to factory inspection in cities of over 5,000 inhabitants. That section provides as follows: "The openings of all hatchways, elevators and well-holes upon every floor of every manufacturing, mechanical or mercantile or public building in this State, shall be protected by good and sufficient trapdoors or self-closing hatches or safety catches, or strong guard-rails at least three feet high, and all due diligence shall be used to keep such trapdoors closed at all times, except when in actual use by the occupant of the building having the use and control of the same."

The petition is bottomed on this section of the statute, describes the defendant's place of business as a manufacturing, mechanical and mercantile plant, and charges the negligence of the defendant to be a failure to protect the hatchway by good and sufficient trapdoors or self-closing hatches or safety catches or strong guard-rails at least three feet high.

The theory upon which the plaintiff tried the case and upon which the plaintiff's instructions are based, is that the defendant did not use "all due diligence" to keep the guard-rail closed when the elevator was not in actual use, using the exact language of the statute, "all due diligence," and by instruction three declaring that that term meant such care and caution as reasonably prudent persons would exercise under the same or similar circumstances.

Section 6435, upon which this action is based, is section five of the Act of 1891 (Laws 1891, p. 159) the

title to which is, ''An act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employees.''

The language of the section, together with the context and the other accompanying provisions of the act, clearly demonstrates that the lawmakers had in mind provisions for the safety of the employees in large factories, and that the section here involved was intended to provide that elevator shafts should be closed on every floor of the building while the elevator was not in use, so as to prevent persons working around the same in the factory from falling into such elevator shafts. It was not the purpose of the framers of the section to prescribe such precautions in order to protect the person whose duty it was to operate or run the elevator, while so doing. The statute leaves the duty of the master to the servant employed to operate the elevator the same as it was at common law. The section of the statute, upon which this action is predicated, does not attempt to create any new right or duty between the employer and the servant with respect to the operation of the elevator. This case is, therefore, wholly unlike the case of Wendler v. People's House Furnishing Co., 165 Mo. 527, which arose under an ordinance of the city of St. Louis, and where the plaintiff was not engaged in the operation of the elevator.

As was said by GANTT, J., in Lore v. American Mfg. Co., 160 Mo. 621, in speaking of an action under this statute, where it was claimed that the action was not based on the statute: ''It is true the pleader does not refer in express terms to the title of the act or aver that the failure of the defendant to safeguard its jute machine was a violation of said act, but this is not at all necessary. It is sufficient when the law, as it is in this case, is a public act, to state the facts which bring his case clearly within the law, and this he has done.''

The plaintiff in this case, both by his petition and

his instructions, has attempted to bring this case within the provisions of the statute, using the very terms of the statute in describing the negligence of the defendant. But as above pointed out this section of the statute has no application to a case of this character, and if the petition had been attacked by a general demurrer it should have been held insufficient.

The defendant, however, tried the case upon the theory of non-liability, because the elevator was actually in use at the time the plaintiff was injured. There is no testimony in the case on plaintiff's behalf bearing upon the actual use of the elevator at said time except the testimony of the plaintiff himself, who said that he was directed to go to the fourth floor, get two dozen collars, put them on the elevator and bring them to the first floor; that he saw that the crossbar at the front of the elevator was open; that for the purpose of executing his order and of bringing the elevator to the fourth floor in order to put the collars on it, he stood by the open hatchway, reached out with both hands, took hold of the rope that started the elevator, got the elevator stated on its upward course, and just as he had done so he lost his balance and fell. Upon this undisputed testimony the defendant contends that the plaintiff stated no case under the statute, because the elevator was in actual use on the fourth floor at the time of the accident, and the statute exempts the owner from using "all due diligence" to keep the trapdoors, self-closing hatches, safety catches or strong guard-rails at least three feet high, closed, when the elevator is in actual use.

If the statute applied to a case of this character this objection would be fatal to the plaintiff's case, under the undisputed facts of the case stated by the plaintiff himself. To avoid these consequences the plaintiff contends that no express reference to the statute is contained in the petition, but that, "where the action is based on facts constituting a cause of action at common

law, plaintiff is not confined to the statute or ordinances in making his case.'' And that, ''this statute was enacted for the benefit of the employee and no construction should be put upon it which would destroy any right which plaintiff would have had at common law.'' And counsel cite cases which, without careful discrimination, give color to this contention, but in Hogan v. Railroad, 150 Mo. 36, where the action was predicated upon the violation of a speed ordinance, and where the testimony failed to make out such a case, it was held that the plaintiff could not be heard under such a petition to rely upon common-law negligence; and this is the logical and common-sense view to take.

This case was tried by the plaintiff in the lower court upon a petition and instruction which predicated a right of recovery under the statute, and the plaintiff cannot now be heard to claim a right to recover as for common-law negligence. A statute may or may not destroy a common-law right, and will not be construed to destroy such a right, unless the intention of the Legislature clearly appears to have been to produce such a result. But this rule of construction cannot be invoked by one who predicates a right of recovery upon the stat-, ute, and who does not invoke the aid of the common law. And such is this case.

## II.

But assuming for the purpose of argument, that the statute was intended for the protection of operatives of elevators, then the defendant's objection, that under the very terms of the statute the defendant is not liable in this case under the facts proved, must be sustained. If, as the plaintiff says, the elevator was in actual use at the time he received the injury, the case falls within the exception specified in the act. The plaintiff testified that he had been instructed in the use of the elevator by both Smith, the foreman, and Kelley, the former assistant foreman, and that while instructing him the

crossbar at the front of the elevator on the fourth floor was open. He further testified that it was a part of his duty to go to the fourth floor, get collars, put them on the elevator and carry them to the first floor, and that he had done so many times. His testimony in all these particulars was flatly contradicted by the foreman, Smith, and by all the other servants and agents of the defendant with whom the plaintiff worked, and it was shown by all the other witnesses that it was no part of the plaintiff's duty so to do, but that when he had been caught playing on the elevator he had been made to get off of it, had been reported to the foreman and had been reprimanded by the foreman and ordered never to get on the elevator again. But assuming that the jury were justified in believing the testimony of the plaintiff, and in discrediting that of all the other witnesses in the case, the fact still remains that, according to the plaintiff's own testimony, his duty and instructions required him to use the elevator in the exact manner he says he did on this occasion, and to start it while the crossbar was up, out of place. As improbable as such testimony undoubtedly is, the plaintiff was entitled to have the full benefit of it for all it was worth; but giving it its full weight and force, it does not entitle the plaintiff to recover in this form of action, because the statute has conferred no right of recovery under such circumstances, but on the contrary, exempts the defendant from liability because the elevator was in actual use on the fourth floor at the time of the accident.

This argument, however, only accentuates what has been said with reference to the object and meaning of the section of the statute quoted, and the more clearly demonstrates that that section was never intended to afford a right of recovery under circumstances such as are disclosed in this case.

The learning and diligence and skill of counsel have exhaustively covered other features of this case, notably the questions of contributory negligence and

assumption of risks, and the eight instructions given for the plaintiff, the eight given for the defendant, the five asked by the defendant and modified and given by the court, and the eight asked by the defendant and refused by the court, have stated the law in all of its phases upon these propositions, but under the view here taken it is not necessary to prolong this discussion by an examination of the various errors assigned, for the reason that, after all, the plaintiff's right of recovery depends upon the construction of the statute, and the plaintiff has failed to bring himself within the provisions of the statute. Whether or not the plaintiff would be entitled to recover as for common-law negligence is not a legitimate subject of discussion or determination in this case.

For the foregoing reasons the judgment of the circuit court is reversed.

All concur, except *Valliant, J.,* who dissents.