MICHAEL CECH, JR., GEORGE CECH and CHARLES CECH, by HARRY TER BRAAK, Their Guardian, v. MALLINCKRODT CHEMICAL COMPANY, Appellant.—20 S. W. (2d) 509.

Division Two, August 6, 1929.

*Jones, Hocker, Sullivan & Angert* and *Ralph T. Finley* for ap-pellant.

*Mark D. Eagleton* and *Hensley, Allen & Marsalek* for respondents.

COOLEY, C.—Plaintiffs are the minor children of Michael Cech, deceased, and, their mother being dead, they sued by their guardian in the Circuit Court of the City of St. Louis, to recover damages for the death of their father, who was killed on February 16, 1923, by falling down an elevator shaft in defendant's manufacturing plant. Plaintiffs recovered judgment for $10,000, from which defendant appeals.

Michael Cech was a laborer in the employ of defendant in its building No. 6, in which one of the processes carried on was the making of tannic acid for use in its business of manufacturing chemicals. He had been so employed for five or six years prior to his death. He was a steady worker, earning about $25 per week, and at the time of his death was about thirty-two years of age.

The tannic acid was manufactured in a still located on the first floor of defendant's said building, and three or four times a week the liquor was pumped from the still, by means of a steam pump located on the same floor, to a large vat or tank on the third floor. Defendant maintained in the building a freight elevator which ran from the first to the fourth floors and which was customarily used by employees in going from floor to floor. In front of the opening into the elevator shaft on each floor, and sixteen to eighteen inches, possibly two feet, from the side of the shaft, there was a fire door which moved on an overhead slide or track and was opened by pushing to one side. Inside the fire door there was a wooden gate, which moved up and down and could be raised or lowered at will whether the elevator car was at that floor or not. It did not operate automatically, that is, was not operated or affected by the movement of the elevator, nor did its position affect the operation of the elevator. The elevator car could be moved by a person on any floor of the building, whether the car was at such floor or not, and regardless of the position (whether open or shut) of the gates. There was no device of any kind on the elevator to control the movement of the gates. The space or sill between the fire door and the edge of the elevator shaft, called by the witnesses a ledge, was covered with iron.

At the time of the accident by which Cech lost his life he was working on the night shift, 6:30 P. M. to 6:30 A. M., and one Anton Nissen had the day shift, 6:30 A. M. to 6:30 P. M. It was Nissen's custom to give Cech when the latter came on duty instructions as to what he had to do during the night. When Cech reported for work at 6:30 on the evening of the accident, Nissen told him that the liquor in the still was ready to be pumped, and departed leaving

Cech on the first floor where the conversation between him and Nissen had occurred. Pumping the liquor was a part of the work Cech had to do that night. There was also the still and some running machinery on the first floor for him to look after. Before pumping the liquor it was customary and necessary for him to go to the third floor and examine the vat to ascertain that there was space therein to receive it.

Mr. Vieth, defendant's superintendent, was called and reached the plant about eight P. M. Plaintiff's dead body was then in the bottom of the elevator shaft. Nissen was called and returned in response to the message about 8:30. The body had then been removed from the shaft. By whom the body was discovered, by whom removed and who summoned Vieth and Nissen are facts not shown. Nissen on his arrival found hanging upon a valve of the still a black shirt which deceased had worn on his arrival at the plant that evening. Mr. Vieth, who was called as a witness by plaintiffs, went to the third floor upon his arrival and made an inspection. He found deceased's cap lying on the ledge between the fire door and the edge of the elevator shaft above described. The fire door was open sixteen or eighteen inches, "something like that," the wooden gate was raised, that is, open, and the elevator itself was at the fourth floor.

There was an electric light "over the floor" on the third floor. There was no light in the elevator shaft, but there was one in the elevator car which the person operating the car could turn on or off. Vieth did not know whether or not the light was burning when the accident happened. The entire evidence relative to light on the third floor was the testimony of Mr. Vieth, as follows:

"Cross-Examination, by MR. WELKER.

"Q. Immediately after you got down to the plant that night when you were called, you went up and made an inspection on the third floor, did you? A. Yes, sir.

"Q. It was plenty light so you could make that inspection, was it? A. Yes, sir.

"Q. And you noticed the cap there on the ledge? A. Yes, sir.

"Q. You didn't have to have any other light than what was there to make that inspection? A. Yes, sir.

"Q. You noticed, of course, that the elevator was not there? A. Yes, sir.

"Q. You could see that? A. Yes, sir.

"Q. Could that be easily seen from the conditions as they existed there that night? A. Yes, sir.

"Q. Very visible, was it? A. Yes, sir; very clear.

"MR. WELKER: That is all.

"Redirect Examination, by MR. EAGLETON.

"Q. In that connection, Mr. Vieth, the light was outside in the third floor, there is an electric light? A. There is a light installed over the floor.

"Q. But in the shaft, there was no light? A. No, sir.

"MR. EAGLETON: That is all."

No one witnessed the accident, and Nissen testified that when he left the plant at 6:30 there was no one in the building so far as he knew but Mr. Cech.

It was shown that there were various devices on the market that were and had been in use by reputable concerns in and around St. Louis for ten or twelve years previously, to prevent an elevator car from being started if the gate was up and to prevent the gate being raised if the car was not at the floor, and that with such device installed it would be impossible to raise the gate at a certain floor if the elevator was not at that floor without forcing, i. e., breaking, the gate, and that it would be impossible for a person on one floor to move the car from another floor if the gate was up. These devices would cause the gate at a certain floor to close automatically if the car was moved from that floor. Such gates were known as automatic gates. The elevator in defendant's building was not equipped with any of these safety devices.

In the petition plaintiffs allege several specifications of negligence. At the close of plaintiffs' evidence defendant requested a peremptory declaration in the nature of a demurrer, which was refused, and then presented separate withdrawal instructions as to each of the several specifications of negligence in the petition, all of which were given except two. The two remaining specifications upon which the case was permitted to go to the jury were No. 2, charging negligence in the alleged violation of Section 6789, Revised Statutes 1919, and No. 4, charging negligence in the failure of defendant to comply with the following provision of an ordinance of the city of St. Louis introduced in evidence, to-wit: "The entrance to the [elevator] shaft shall be provided with a semi-automatic gate at least five feet in height, properly fitted with a device to prevent the gate from being opened until the platform of the car arrives at the floor landing, and which shall cause the gate to close automatically as the car leaves the floor landing."

Defendant's answer was a general denial and a plea of contributory negligence in that deceased "voluntarily left his place of employment on the first floor of defendant's building and went to the third floor thereof and negligently and carelessly stepped into the elevator shaft without looking or attempting to determine where he was stepping."

Defendant offered no evidence, but stood on its demurrer.

In its brief here appellant makes two assignments of error, viz: (1) that the court erred in refusing defendant's requested instruction in the nature of a demurrer to the evidence, and (2) that the court erred in refusing the instruction withdrawing from the consideration of the jury the alleged negligent violation of the state statute.

I. Under its first assignment of error appellant asserts three propositions, viz.: 1, that the evidence shows that if deceased fell down the elevator shaft his death was the result of or was contributed to by his own negligence in negligently walking into the open door of the elevator or in opening the door and stepping into the shaft without ascertaining whether or not the elevator was at the third floor; 2, that the evidence does not show that defendant's failure properly to equip the elevator was the proximate cause of deceased's death; and 3, that the verdict is necessarily based upon conjecture.

1. In considering the demurrer it is necessary to keep in mind that no one witnessed the accident, direct evidence of how deceased happened to fall and of his conduct at the time being therefore unavailable, and that in such circumstances certain well-established rules are applicable.

"In passing upon a demurrer to the evidence, the court is required to make every inference of fact in favor of the party offering the evidence, which a jury might, with any degree of propriety, have inferred in his favor. . . . But the court is not at liberty, in passing on such demurrer, to make inferences of fact in favor of the defendant to countervail or overthrow either presumptions of law or inferences of fact in favor of the plaintiff; that would clearly be usurping the province of the jury." [Buesching v. St. Louis Gas Light Co., 73 Mo. 219. See also Troll v. Drayage Co., 254 Mo. 332, 337, 162 S. W. 185; Stewart v. Laclede Gas Light Co. (Mo.), 241 S. W. 909, 911 and cases cited.]

A demurrer should be sustained only when the facts and inferences to be drawn therefrom, considered in the light of the foregoing rule, are so strongly against the plaintiff as to leave no room for reasonable minds to differ.

"Negligence is ordinarily a question for the jury. It is always so when the evidence on material points is conflicting, or where the facts being undisputed different minds might reasonably draw different conclusions from them. . . . If the inferences to be drawn from the evidence are not certain or incontrovertible, the question of negligence cannot be passed upon by the court." [Gratiot v. Mo.

Pac. Ry. Co., 116 Mo. 450, 466, 21 S. W. 1094. See also Troll v. Drayage Co., supra; Scherer v. Bryant, 273 Mo. 596, 602, 201 S. W. 900; Steffens v. Fisher, 161 Mo. App. 386, 393, 143 S. W. 1101.]

The presumption must be indulged that deceased was in the exercise of due care for his own safety: Buesching v. Gas Light Co., supra; Stewart v. Gas Light Co., supra; Burt v. Nichols, 264 Mo. 1, 17-18, 173 S. W. 681; and that he did not commit suicide: Unrein v. Oklahoma Hide Co., 295 Mo. 353, 369, 244 S. W. 924; Stewart v. Gas Light Co., supra, where no one saw the accident and wherein it is aptly said (l. c. 912):

"It is contended that there was no evidence that appellant's negligence was the cause of Lacy's death, There is a presumption against suicide, and in this case against contributory negligence which excludes these as possible explanations of the death of Lacy, in so far as it concerns the question now being considered."

Appellant says in its brief that it is manifest that the elevator door was open when deceased went to the third floor or that he opened the door himself, and argues therefrom that it is more probable that he used the elevator to go to the third floor and left the gate open himself because "there is no presumption or proof that the elevator door was left open by any one other than the deceased or that the defendant is legally responsible for its being open at the particular time in question." But the absence of proof or presumption that some one else left the door open by no means amounts to proof or presumption that deceased used the elevator in going to the third floor and himself opened the door and left it open. The answer to the question whether he did so or not must be sought in the facts and circumstances shown by the evidence. It is a much more reasonable inference that he did not so use the elevator on this occasion. The elevator was found immediately after the accident at the fourth floor. There is nothing in the evidence to indicate that it could have moved without human agency from the third to the fourth floor had deceased used it going to the third floor and left it there. There is no evidence tending to show that he had any business on the fourth floor or any occasion to go there. He did have business on the third floor and did go there. If for some undisclosed reason he went to the fourth floor in the elevator it seems unlikely that he would have left it there and walked down to the third, leaving the elevator at the fourth floor, when his work of pumping the liquor and watching machinery would require him to go on down to the first floor. It seems a much more probable inference and one the jury may well have drawn from the evidence that when he desired to go to the third floor to examine the vat preparatory to pumping the liquor he did not find the elevator on the first floor and walked up to the third

and then, his errand concluded, seeing the open door and supposing the elevator to be there, passed through the door and fell to his death.

Appellant contends that there was sufficient light on the third floor that if deceased had looked he must have seen that the elevator was not there and that that fact is so patent from the evidence that the court should have so found as a matter of law. We have set out in full all of the evidence bearing upon the question of light on the third floor. There was no light in the elevator shaft. If the light in the elevator car was burning its rays would have thrown no light down the shaft or to the third floor because of the floor of the elevator. There appears to have been but one electric light, somewhere "over the floor" on the third floor, but neither its capacity nor its location with reference to the opening into the elevator shaft is shown, nor is the size of the third-floor room. From aught that appears in the evidence the light in front of and in the shaft may have been dim enough that one, absorbed in his work, could have failed to note the absence of the elevator without being chargeable with contributory negligence. Appellant bases its argument on this point on Vieth's testimony that he could and did see clearly that the door was open and the elevator not there. But Vieth went up there to make an inspection and of course had his attention fixed by that purpose. *And Vieth may have had more light.* At least it is by no means certain from his testimony that he did not have. Note this question and answer: "Q. You didn't have to have any other light than what was there to make that inspection? A. Yes, sir." If Vieth meant what he said in that answer he had to have additional light even though he was there for the purpose of making an inspection. If he meant *no* instead of "yes" it would seem that appellant's able counsel would have pursued the inquiry and cleared up that point. While the witness was called by plaintiff he was defendant's superintendent and showed no unfriendly disposition toward his employer. The court could not assume in passing upon a demurrer that the witness may have meant other than he said. Apropos of this situation we have ruled heretofore. In Drain v. St. Louis, etc., Ry. Co., 86 Mo. 574, the case turned upon whether or not plaintiff was guilty of contributory negligence and that question practically narrowed down to the construction of plaintiff's answer to one question, which was really two questions in one—a sort of double-barreled question. The answer might have applied to either part of the question but with different results, leaving it subject to different possible interpretations. The court said that the plaintiff's answer did not clearly and conclusively show that he did not look and listen before going upon the track where he was injured and that if the evidence in that respect was uncertain, vague and ambiguous the trial court could not determine it as a matter of law

and that the evidence upon the issue of contributory negligence should be clear, definite and certain for the court to be justified in directing a verdict on that account.

In Unrein v. Oklahoma Hide Co., supra, the facts were in many respects similar, in some particulars perhaps slightly more favorable to plaintiff on this issue than in the instant case, in others rather less so. For instance, in that case the concrete floor adjacent to the bottom of the elevator pit into which deceased wheeled the truck, upon which he then sat down and waited till the elevator descended upon and crushed him, was two inches higher than the concrete bottom of the pit, so that there was a bump when the wheels of the truck passed into the pit. It was argued that such bump should have warned him that the elevator was not there. He had worked there for a short time, at least, and must have known that the elevator did not have automatic gates. In discussing the issue of contributory negligence the court said:

"Had the elevator been protected by automatic gates properly[11] operating, it would have been impossible for deceased to have pushed his truck into the space usually occupied by the elevator without discovering the elevator was not there. Defendant concedes its failure to equip the elevator with such gates. The effect of the admitted violation by defendant of the city ordinance must therefore be taken into consideration in determining the negligence of deceased as a matter of law.

"Statutes which require guarding of dangerous machinery and that automatic gates be furnished at elevator entrances, are enacted for the very purpose of protecting those coming within their provisions against their own thoughtless acts' in the performance of their ordinary duties. They contemplate that at such times such persons will fail to observe the precautions necessary to protect them in the absence of guards, gates, etc. They cannot be held to be guilty of negligence as a matter of law for the doing or the failure to do many acts which would bar recovery if such acts were done in connection with machinery or appliances not coming within the provisions of such statutes. The ordinance required automatic gates. The purpose of such requirement was to keep persons from falling into the shaft or being struck by or caught in the elevator. The only danger in the basement came from the descending elevator—the very thing which caused deceased's injuries. His act in entering the shaft while the elevator was on the first floor was therefore of the character the ordinance requiring gates was designed to protect him against and he came within the rule above announced. The ordinance was designed to protect heedless acts on his part *liable to be committed by men of ordinary prudence under a like situation.* Support for these views is found in the following cases: Shaw v.

Kansas City, 196 S. W. 1091, l. c. 1098; Simpson v. Iron Works, 249 Mo. 376, l. c. 389; Hughes v. Contracting & Mfg. Co., 188 Mo. App. 549, l. c. 557.''

In this case, as in the Unrein case, defendant's failure to equip the elevator with automatic gates as required by ordinance, the presence of which would have prevented deceased from falling into the shaft, is proved and, in fact, is admitted in appellant's brief. Such failure was negligence so that here as in the Unrein case defendant's negligence is conceded. [Burt v. Nichols, supra; Prapuolenis v. Goebel Constr. Co., 279 Mo. 358, 213 S. W. 792.] Men are prone to become engrossed in their work and to overlook taking precautions for their own safety which, to the vision of *hindsight* quickened by an accident, it may appear they should have taken. The law recognizes this fact in the various requirements made for safety devices and appliances designed to protect employees and others from the consequences of such tendency and takes cognizance of the same fact in determining what constitutes ordinary care in a given situation.

We have examined the cases cited by appellant under this as well as other points of its brief. The first one cited on this point, Bock v. Fellman Dry Goods Co. (Tex. Civ. App.), 173 S. W. 582, is declared by appellant to be squarely in point. That decision might be persuasive in favor of appellant's contention but for the fact that the case went to a higher court which reversed the Court of Appeals and held that the issue should have been submitted to the jury. See same case, 212 S. W. 635, where the final opinion is reported. It is authority for respondents.

Kauffman v. Machin Shirt Co. (Cal.), 140 Pac. 15, is somewhat similar in its facts, but was noticed in the Unrein case and was not considered authority against respondent therein. In the Kauffman case there was no question as to sufficiency of light. It was shown that deceased himself, finding the door of the elevator unfastened, pushed it open and stepped into the shaft without looking when, as the court held, to look was to see. The presumption of due care on the part of deceased, if such presumption is recognized in that state, was not considered in the opinion. And, moreover, while the court held that on the facts shown deceased was guilty of contributory negligence, it further held that the demurrer was properly sustained for another reason, viz., that the ordinance requiring automatic doors did not apply for the reason that it was enacted *after* the elevator had been installed and by its terms applied only to elevators that should be installed after its enactment. The Massachusetts cases relied on by appellant were referred to by the court as precedents for its conclusion in the Kauffman case. For the reasons stated we do not regard them as authority for appellant's contention on the facts shown here.

In Grand Rapids Bedding Co. v. Furniture Temple Co. (Mich.), 188 N. W. 538, there was an operator for the elevator who could be called by pressing a buzzer, as deceased knew. The door of the elevator was open only three or four inches. There was no lack of light. Deceased, familiar with all the surroundings, instead of pushing the buzzer to call the operator, opened the elevator door and without looking stepped into the shaft. The elevator not being there he fell and received injuries from which he died. The facts were all shown by evidence. There was no violation of statutory or ordinance duty shown. It is worthy of note that in discussing the fact that deceased found the elevator door practically closed and had to push it open in order to enter the shaft, which fact the court deemed important in determining his negligence, the court cites Bremer v. Pleiss, 121 Wis. 61, 98 N. W. 945, wherein this is said:

"So it has been held that, where the door is fully open and the shaft is dark, the question of whether a passenger is guilty of contributory negligence in stepping in without examination is one for the jury." [Citing cases from Maryland, Tennessee and New York.]

In Marshall v. United Rys. Co., 209 S. W. 931, and Bonanomi v. Purcell, 287 Mo. 436, 230 S. W. 120, the plaintiff's own evidence was held conclusively to show contributory negligence, but the facts were not analogous. In Williams v. Railroad, 257 Mo. 87, 165 S. W. 757, deceased, a brakeman, stepped off a moving train in front of the engine, intending to throw a switch, and in some way fell and was run over and killed. The facts are too dissimilar to make the case a precedent in this case.

We think that, in the circumstances shown in this case, the court could not properly have declared as a matter of law that deceased was guilty of contributory negligence barring recovery. In so disposing of this issue we recognize that, as claimed by appellant, contributory negligence is available as a defense and if shown will bar recovery even though defendant's negligence be the violation of the statute or ordinance relative to equipping the elevator.

2. We next consider appellant's contention that the conceded failure of defendant to equip the elevator with safety devices was not the proximate cause of deceased's death. Just what is proximate cause in such cases is often a perplexing question. With his well-known facility of expression, Judge LAMM once said of it:

"What is a proximate cause is often one of the most subtle and profound questions that ever vexed philosophers (and he might have added, "or courts"). I remember it was told of no less men than Pericles and Protagoras that they argued for a whole day on whether the dart, or the thrower of the dart, or those who arranged the game was the cause of the death of a participant in the Olympian games.

The better view is that where it is permissible on the facts . . . to the jury is left the issue of fact of proximate cause."

A good practical rule and one that is quoted with approval in Ward v. Ely-Walker Dry Goods Co., 248 Mo. 348, 154 S. W. 478, is laid down in Hayes v. Michigan Central Railroad Co., 111 U. S. 228. There was an ordinance requiring defendant railroad company to maintain fences along its right of way in Chicago, such as would "secure persons and property from danger," etc. Plaintiff, a boy eight or nine years of age, got upon the right of way because of the absence of the fence. Such fence, if it would not have prevented his getting upon the right of way, might at least have served as a notice and signal of danger. The boy, running along beside a passing train, fell under it, or possibly was partly drawn under by the draft of the train, and was injured. The railroad's failure to fence was regarded as negligence. The lower court had sustained a demurrer to the evidence. The Supreme Court said: ·

"It is further argued that the direction of the court below was right, because the want of a fence could not reasonably be alleged as the cause of the injury. In the sense of an efficient cause, *causa causans,* this is no doubt strictly true; but that is not the sense in which the law uses the term in this connection. The question is, was it *causa sine qua non,* a cause which if it had not existed, the injury would not have taken place, an occasional cause? and that is a question of fact, unless the causal connection is evidently not proximate."

Cases are cited supporting the rule announced. It was held that the case should have been submitted to the jury.

In Burt v. Nichols, supra, where deceased was burned to death in a rooming house not provided with fire escapes as required by ordinance, it was held that absence of proximate cause should ordinarily appear from facts shown affirmatively rather than be deduced as inferences favorable to defendant from a state of non-speaking facts from which contrary inferences could just as well be drawn. In Soeder v. Railroad Co., 100 Mo. 673, 13 S. W. 714, deceased, a brakeman, was riding on top of a freight car from which he fell and was killed. There was evidence of a depression in a rail which would tend to make a car passing over it jolt—as when a wagon wheel hits a rut—and that such jolt might have caused deceased to fall. No one saw the accident. It was held the question of whether the depression in the rail caused deceased's death was for the jury. In Settle v. Railroad, 127 Mo. 336, 30 S. W. 125, deceased brakeman had attempted to uncouple a car from a moving engine. He stood upon a foot rest, holding by one hand to a handhold on the side of the car, while with the other he uncoupled the car. His feet slipped from the foot rest, and after maintaining a hold on the handhold for a few moments he fell under the car and was killed. The only neg-

ligence attributable to defendant was the defective condition of the handhold. In considering the question of proximate cause the court said that the inference might fairly be drawn that deceased fell because in the emergency he was unable to secure a firm hold on the handhold by reason of its defective condition; that, on the contrary, it might as readily and fairly be inferred from the facts that the slipping of his feet was the sole cause of his fall, he having taken only such hold as would sustain his balance while on the foot rest and being unable to get a better hold when his feet slipped, for which latter cause defendant would not be liable; and that there being evidence from which the jury could reasonably conclude that the bent condition of the handhold was the cause of the injury, the jury should have been left to draw the correct inference from the facts in evidence.

The plaintiff's evidence need not exclude the *possibility* of accident or of a cause for which defendant is not liable, but it is sufficient to make a submissible case if there is substantial evidence that the injury resulted from a cause for which defendant is liable. [Stewart v. Laclede Gas Light Co., supra.]

In Buesching v. Gas Light Co., supra, Hatchett v. United Rys. Co. (Mo.), 175 S. W. 878, and Daly v. Pryor, 197 Mo. App. 583, 198 S. W. 91, the facts were, we think, no stronger for plaintiff on the issue of proximate cause than in the instant case, if as strong, and the evidence was held in each to make the question one for the determination of the jury. See also Kidd v. Rock Island Ry. Co., 310 Mo. 1, 24, 29, 274 S. W. 1079, and cases cited.

Appellant cites in its brief in support of this point, Goransson v. Mfg. Co., 186 Mo. 300, 307, 85 S. W. 338; Grant v. Southern Ry. Co. (Mo.), 190 S. W. 586, 589, and Strother v. Railroad (Mo.), 188 S. W. 1102, 1105.

In the Goransson case plaintiff was struck in the eye by a sliver from a "drifting pin" which he was driving with a steel hammer. It was claimed that the pin was too highly tempered for which, if true, the master was liable. But it was not shown that the pin was thus defective, and it *was* shown that a glancing blow struck by plaintiff himself would cause slivers to fly from the pin, and there was no evidence of the character of the blow struck. But in Duerst v. St. Louis Stamping Co., 163 Mo. 607, 622, 63 S. W. 827, distinguished in the Goransson case, the court had under consideration a similar accident caused by a particle of iron striking and destroying plaintiff's eye. Plaintiff had been furnished a too highly tempered hammer. The chip that struck his eye was too minute to be tested to determine whether or not it came from the hammer as alleged, but there was evidence from which the jury could find that it probably

did not come from the object struck by the hammer. The court held the question to be for the jury, saying:

"It often occurs in the trial of a lawsuit that the triers of fact must reach a conclusion from reasoning upon probabilities without positive proof. There was sufficient proof in this case to justify a jury in concluding that it was a small chip from that hammer that destroyed plaintiff's eye.

In the Grant case this court was of the opinion that there was no evidence from which it could be found that deceased's fall and death were attributable to the only one of several possible causes for which defendant would be liable. So in the Strother case, where deceased was struck and killed by the handle of a jack with which he was helping to lower a car. The evidence was meager, even that tending to show defendant's negligence. It was held that the presumption of due care on deceased's part (no one having witnessed the accident) eliminated some of the causes which may have produced the result, but left others for which defendant would not be liable, and that a verdict for plaintiff would have to be based on mere conjecture.

In our opinion none of the cases cited by appellant on this point militate against the authority of the cases above mentioned, in which it was held that the case should be submitted to the jury. Defendant concedes that it failed to equip the elevator with the automatic gate required by the ordinance. Had it been so equipped and the device in working order, deceased could not have inadvertently stepped or fallen into the shaft when the elevator was at the fourth floor. We rule this point against appellant.

3. Appellant asserts that under the evidence a verdict for plaintiffs can be based only upon conjecture. The rule which it claims applies to the facts of the case is thus stated in Coin v. Lounge Co., 222 Mo. 488, 508, 121 S. W. 1:

" 'If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty, that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action.' "

It is but another way of saying that there must be evidence produced from which the jury may reasonably and properly find that the injury was caused by the negligence charged and for which defendant is liable. The cases cited by appellant apply this rule to the situations there under examination. It would unduly lengthen this opinion to attempt to analyze them and point out why, in our judgment, they do not apply here. What we have said above in discussing contributory negligence and proximate cause in effect dis-

poses of this contention. We think the defendant's demurrer to the evidence was properly overruled.

II. The only other assignment of error in appellant's brief is that the court should have given its requested instruction withdrawing from the jury the specification of negligence predicated on violation of the statute, because, as appellant contends, the evidence shows that deceased was or may have been using or attempting to use the elevator at the time he fell, and the statute does not apply to persons using the elevator. The trouble with that contention is that the evidence by no means conclusively shows that deceased was using or attempting to use the elevator. He may have been intending to do so and may have found the door and gate open and have fallen down the shaft without making any actual attempt to use the elevator. Under the evidence the court could not assume that deceased was using or attempting to use it. The pertinent part of Section 6789, Revised Statutes 1919, is as follows:

"The openings of all hatchways, elevators and wellholes upon every floor of every manufacturing, mechanical or mercantile or public building in this State shall be protected by good and sufficient trap doors or self-closing hatches or safety catches, or strong guard rails at least three feet high, and all due diligence shall be used to keep such trap-doors closed at all times, *except when in actual use by the occupant of the building having the use and control of the same.*"

We have italicized the language creating the exception. Appellant cites two cases in support of this contention, Latapie-Vignaux v. Askew Saddlery Co., 193 Mo. 1, 12, 91 S. W. 496, and Pronnecke v. Westliche Post Pub. Co., 220 Mo. App. 640, 649, 291 S. W. 139. The latter was a case bottomed on common-law negligence, on dissimilar facts, and merely cited the Latapie-Vignaux case without discussion. In the Latapie-Vignaux case plaintiff was using the elevator. It was run by ropes connected with machinery in the basement of the building. To move it the operator pulled the ropes. The plaintiff was leaning into the shaft, pulling on the ropes in order to bring the elevator from another floor to the one he was on, and lost his balance and fell down the shaft. The action was based on violation of the statute. In holding that the action could not be maintained, MARSHALL, J., said:

"It was not the purpose of the framers of the section to prescribe such precautions in order to protect the person whose duty it was to operate or run the elevator, *while so doing.*" (Italics ours.)

He further said that if the section of the statute in question applied, the facts brought the case within the exception to the statute, because the plaintiff was using the elevator at the time. But it is

further stated in that case that it is unlike Wendler v. People's House Furnishing Co., 165 Mo. 527, 65 S. W. 737, which arose under an ordinance of the city of St. Louis "and where the plaintiff was not engaged in the operation of the elevator." In the Wendler case plaintiff, an employee, was going to the elevator to use it to go to another floor of the building, just as deceased in this case was probably doing. The elevator was not there and the gate which should have guarded the shaft was open. Not seeing in the dim light that the elevator was not at the floor, plaintiff stepped into the shaft and was injured. The facts of that case are similar to the facts the jury may well have found in this case, and upon such facts the Latapie-Vignaux case, relied upon by appellant, is authority for holding that the statute is applicable. In such circumstances the elevator is not "in actual use by the occupant of the building having the use and control of the same," as contemplated in the exception clause of the statute.

III. Appellant in its reply brief for the first time in the progress of the case makes the suggestion that the ordinance pleaded and introduced in evidence is in conflict with the statute and therefore invalid. No such suggestion appears in appellant's original brief, either in its assignment of errors, points and authorities or elsewhere therein. On the contrary, the validity of the ordinance is assumed or at least tacitly conceded in such brief, and appellant's case is presented on the hypothesis that the ordinance is valid, as appears to have been done in the trial court also where the ordinance was introduced with evidence showing defendant's non-compliance therewith without objection. Respondent, therefore, naturally treated the ordinance likewise and briefed the case here on that theory. Our Rule 15 requires an appellant to state in numerical order in his brief the points relied on for reversal. This of course means the original brief, to the order of which respondent must conform in his brief. We have heretofore ruled that a new point mentioned for the first time in a reply brief will not be considered. [Simmons v. Affolter, 254 Mo. 163, 174, 162 S. W. 168; Orchard v. Missouri Lbr. & Mining Co. (Mo.), 184 S. W. 1138; both approved in Ulrich v. Burlington Ry. Co., 281 Mo. 697, 712, 220 S. W. 682.]

Adherence to our rules is necessary for the prompt and orderly disposition of the business of the court and it places no unjust burden upon litigants to require them to conform to such rules. We therefore decline to consider this point. The judgment of the circuit court is affirmed. *Davis* and *Henwood, CC.*, concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All of the judges concur.